[Civ. No. 11694. First Dist., Div. One. July 15, 1941.]

JULIA POPESCU, Respondent, v. MANUEL POPESCU, Appellant.

Carl W. Mueller for Appellant.

Joseph F. O'Malley for Respondent.

PETERS, P. J.— Defendant appeals from a judgment awarding his wife a divorce on the ground of cruelty. His main contention on this appeal is that, if it be assumed that the evidence supports the findings that he was guilty of acts of cruelty, the evidence, as a matter of law, also establishes that plaintiff was guilty of acts of cruelty towards him, so that, under the doctrine of recrimination, pleaded as a defense by him, plaintiff should have been denied a divorce.

By its decree the court awarded plaintiff custody of the two daughters of the parties, aged fourteen and ten years, directed defendant to pay plaintiff $80 a month for the support of the daughters, and made an approximately equal division of community property, including annuity policies with a cash value of more than $34,000.

Plaintiff is an Hungarian and defendant is a Rumanian. They lived together as husband and wife in Rumania, where, according to defendant, a ceremonial marriage is not required. A son was born of the union, who was twenty-three years old at the time of this action. Defendant came to San Francisco in 1917. In 1922 plaintiff and the boy came to this country with funds provided by defendant, and she and defendant were married in accordance with the laws of this state.

Prior to bringing this present action, plaintiff, within a period of a few years, brought two actions for divorce and two for separate maintenance. A separate maintenance action filed May 3, 1937, was ordered off the calendar on May 21, 1937, as prematurely brought, on the testimony of defendant and one of the daughters that the parties had not separated on March 8, 1937, as alleged, but on May 11, 1937, which was after the action had been commenced. Plaintiff filed a dis-' missal of the maintenance action on May 26, 1937. The present complaint for divorce was filed on May 21, 1937, after the judge had refused on that day to proceed with the trial of the separate maintenance action. Plaintiff testified that the dismissals of the other actions followed reconciliations.

Defendant's trade was that of a "boner", preparing meat for sausage making. About a year after the marriage in this state, real property in San Francisco was purchased and a

building erected, on the ground floor of which defendant conducted his business. The upper story of four rooms was the family residence. The parties were still living in this building when the present action was tried, although in separate rooms, and not as husband and wife. The building cost between $9,000 and $10,000, and was found by the court to be community property. An undivided half interest was awarded to each by the divorce decree.

Plaintiff had worked side by side with her husband in his boning business. It profited to such an extent that they had paid cash in the amount of $34,000 to purchase paid up annuity policies. They had also procured an insurance policy of $2,000 on their joint lives, and a $10,000 policy on the life of the husband, on which premiums were being paid. The marital difficulties seem to have affected defendant to such an extent that he was unable to carry on the business.

In her complaint plaintiff alleged that defendant had annoyed, nagged, scolded and quarreled with her, and had abused and humiliated her; that he possessed an ungovernable temper and would become violently angry with her and abuse her; that in the presence of the children and friends defendant would use towards plaintiff vile, vulgar and abusive language. In a supplemental complaint she alleged that since filing the action defendant had harassed her with pleas for a reconciliation; that she could not go out without being followed by him; that during her absence he had broken into one of the rooms in which she lived separate and apart from him and had removed a rare and valuable violin belonging to a friend.

Defendant denied the charges of cruelty and by way of recrimination set forth a number of acts, which, he alleged, constituted extreme cruelty on the part of plaintiff for which a divorce should be denied to her. He did not himself seek a divorce. The court made findings favorable to plaintiff on the allegations of her complaint, and found against defendant on his defense of recrimination.

Plaintiff gave testimony substantiating the allegations of her complaint, and was corroborated by three witnesses, two of them women friends of long standing, and by the fourteen-year-old daughter of the parties. They testified to defendant's fits of temper, in which he swore at plaintiff and otherwise maligned her. These rages were usually brought on by some incident in the business which upset defendant. He

would come upstairs in a disturbed state of mind and give vent to his emotions by stirring up a quarrel with his wife. Plaintiff and her witnesses testified that she would try to quiet him, but if unsuccessful he would rave on for fifteen minutes to half an hour in a torrent of profanity. The witnesses testified that plaintiff, on such occasions, sometimes broke into tears and left the room. At other times, when provoked, she would reply to defendant's invectives: "You are the same." The testimony was that these tantrums were of frequent occurrence, and that it was defendant and not the plaintiff who provoked domestic strife. Plaintiff testified that defendant had thrown boxes, barrels and meat at her, and also had "thrown around" chairs and dishes. There can be no doubt but that the findings to the effect that defendant was guilty of acts of cruelty are amply supported by the evidence, and defendant does not seriously contend to the contrary. His main contention, as already pointed out, is that, as a matter of law, plaintiff herself had committed acts of cruelty which would have entitled him to sue for divorce, with the result that, although the charges against him be found in her favor, nevertheless the doctrine of recrimination (§ 122, Civil Code) prevents her from obtaining a divorce.

Defendant relies particularly on an incident that occurred early on a Sunday morning in February of 1937. On the day in question, he had returned home from the Sausage Makers' Ball between 2:00 and 4:30 o'clock in the morning with a Mrs. Heldal. Defendant and Mrs. Heldal testified that as he entered, and before he had spoken, plaintiff threw a bowl or vase at his head, which broke and cut him.

Plaintiff testified that she threw the bowl at defendant after he had sworn at her. The evidence also shows that plaintiff and defendant had planned to attend the ball together, and, according to Mrs. Heldal, whose testimony on this point was not disputed, plaintiff had invited the Heldals to accompany them. Mrs. Heldal was an old friend of the Popescus, had attended them at their wedding, and was godmother of their two daughters. Mr. Heldal was unable to go to the ball, and it was arranged that Mrs. Heldal should go with the Popescus. On Saturday afternoon defendant ordered plaintiff to clean the chicken house, and, as she was complying, he came out, and, without provocation on her part, started to revile her and her parents, long since dead. When she went into the house he continued his profane abuse to such an extent that

she took her daughters and left the house, remaining away for several hours.

In the meantime, Mrs. Heldal telephoned from the hairdresser's and talked to defendant. He told Mrs. Heldal that he would call for her there. He brought her to his home, to await plaintiff's return. When she did not return, defendant and Mrs. Heldal left together for the ball. Plaintiff returned to her home about 10:00 o'clock that night. She found that a soup bowl which defendant had left on the stove, over a lighted burner, had broken and that the contents had discolored the stove and floor. She and the two girls went to bed. Some time early Sunday morning the telephone rang several times. When finally answered by plaintiff it proved to be Mrs. Heldal. Plaintiff testified it was then 4:00 a. m., and that Mrs. Heldal started to abuse her over the telephone, and that she hung up. She further testified that at about 4:30 a. m. defendant arrived home in the company of Mrs. Heldal. Both had been drinking. Mrs. Heldal came up to plaintiff's bedroom and continued the abuse she had started on the telephone. This awakened and frightened the two children who started to cry. Thereafter, the husband came upstairs. Plaintiff testified that, ''my husband come upstairs, then he started to call me S. B. and rotten whore, and everything. I said, 'I am that?' Then I grab the soup bowl and smash him in his face, and I kicked him out from the house.'' That then Mrs. Heldal grabbed her, pulled her hair, and called her names. Mr. Popescu then left with Mrs. Heldal, and did not return until about 7:00 o'clock that morning.

Accepting the version of plaintiff, as the trial court did, it appears that it was defendant who was the aggressor in the events which culminated in the throwing of the bowl. The law is clear that acts which might otherwise constitute grounds for divorce may be non-actionable where provoked by the party seeking the divorce. (*Harp* v. *Harp,* 204 Cal. 193 [267 Pac. 101]; *Jones* v. *Jones,* 48 Cal. App. 771 [192 Pac. 463]; *Johnson* v. *Johnson,* 14 Cal. 459.) ''Cruelty, as a foundation for a divorce, must be unmerited and unprovoked.'' (Madden on Domestic Relations, p. 274; see, also, 17 Am. Jur. 192; 19 C. J. 77–79; note, Ann. Cas. 1918B, 496.)

Since the defense of recrimination consists of establishing cause for divorce in favor of the defendant (§ 123, Civil Code), it follows, of course, that if the cause relied on

by the defendant was provoked by him, it is unavailable by way of defense in the same manner as it would be as where it is made the basis of a prayer for divorce.

The conduct of the party who claims to have been provoked may be out of all proportion to the provocation, in which event provocation does not bar a cause for divorce or a defense of recrimination. (*Eidenmuller* v. *Eidenmuller,* 37 Cal. 364; 17 Am. Jur. 192; 19 C. J. 79.) It has been said that no provocation, however great, will justify physical violence. (*Albert* v. *Albert,* 5 Mont. 577 [6 Pac. 23, 51 Am. Rep. 86].) But other decisions do not adhere to such a rule. (See 17 Am. Jur. 192.) In *Jones* v. *Jones, supra,* the wife was denied a divorce where her physical violence provoked defendant to slap her. The question as to whether the physical violence used by one spouse will bar that spouse from securing a divorce, or whether the provocation by the other spouse will excuse the physical violence, is primarily a question of fact. Each case must be determined on its own facts. The trial judge, having the opportunity to see and hear the witnesses, is best able to ascertain whether the physical violence used was induced by the other spouse, or whether, under the circumstances, it was out of proportion to the provocation.

The record herein will support the conclusion that the parties lived in a state of violent turmoil and disharmony induced by defendant's irascibility and emotional instability. The record also supports the conclusion that defendant, by his actions that Saturday afternoon and Sunday morning, had so irritated the plaintiff, and his acts were so calculated to provoke her, that her actions were the result of his provocation. In the circumstances, accepting plaintiff's version of what took place, as this court must in view of the judgment in her favor, her conduct in throwing the bowl at defendant, while not "justified", nevertheless was induced by defendant, and, considering their emotional condition, as revealed by the record, was not an unnatural response to the provocation.

Defendant also relies on other acts of plaintiff as establishing his defense of recrimination. Most of these other acts took place after the bowl throwing incident.

As a result of the quarrel after the Sausage Makers' Ball, plaintiff filed an insanity complaint against defendant. She testified that she telephoned Mr. Mueller, defendant's attorney, who represents him on this appeal, and Mueller advised

the filing of the insanity complaint. He arranged to meet plaintiff and to go with her to file the complaint. The clerk suggested that she wait a week. Mr. Mueller accompanied her a second time, and, according to her testimony, gave the clerk the information used in procuring issuance of a warrant of arrest for insanity. Defendant was kept under observation for six days and then released by the court, following receipt of a letter from the doctor in charge stating that defendant showed no evidence of abnormal mental behavior, that he had a history of domestic strife, and that rearrangement of the family situation was suggested.

Plaintiff thereafter brought the separate maintenance action which preceded the present suit, and in that action sought a restraining order with reference to community property. In the order presented to the judge was included a provision ordering him to remain away from the residence. The judge refused to sign the order until these words were stricken out.

On two occasions after filing the present complaint, plaintiff summoned the police. On May 30, 1937, defendant testified, he wished to give the older daughter $5.00 for a present, as she was graduating from grammar school. He testified that plaintiff instructed the child to throw the money and letter with it out the window to him. Plaintiff testified that defendant came upstairs and started a disturbance, and that she called the police when he refused to leave the room. On August 5, 1937, in the absence of plaintiff, defendant entered one of the rooms which plaintiff kept locked for herself and the children, and removed a violin which had been pledged for a loan of $100 defendant had made to a friend. On plaintiff's return she found the closet in disorder and again called the police. On both occasions the officers left after talking with defendant.

As part of his defense of recrimination defendant also contends that plaintiff gave false testimony at the trial of the separate maintenance action as to the date they ceased living together as husband and wife. She alleged in her amended complaint therein that the date was March 8, 1937. As noted above, the court refused to proceed with the trial of that action on the testimony of defendant and the older daughter that the date was May 11, 1937, which was after the maintenance suit was filed. In the present action plaintiff testified that the date was in fact March 8, 1937, but that her com-

plaint herein gave the date as May 11, 1937, in order to conform with the ruling of the court in the prior action.

The answer also averred, and defendant sought to prove, that plaintiff poisoned the mind of the older daughter against him, that she screamed and yelled at him and called him vile names. The trial court resolved all conflicts in the evidence in favor of plaintiff, and this court is bound by the findings of the trial court where the evidence is in conflict. While plaintiff's acts in summoning the police, in filing the insanity complaint against defendant, and in seeking an order restraining him from occupying the family dwelling may not have been fully justified, it cannot be held, as a matter of law, that thereby she forfeited her cause for divorce. These acts took place after the violent quarrel involving the bowl incident. Upon the evidence the trial court was warranted in concluding that it was defendant who provoked the unhappy domestic situation which culminated in that incident, and that plaintiff, in her overwrought and disturbed state of mind following that occurrence should not be held to a standard of conduct to be expected of persons in a calmer mental and nervous state.

■ Defendant further contends that a divorce should be denied his wife for the reason that when the action was brought the parties were still living in the same house. It is not disputed that the parties ceased living together as husband and wife before this action was filed. In fact, in his answer defendant alleges by way of recrimination that since May 21, 1937, when the suit was filed, plaintiff had refused to speak to him, that she locked herself in certain rooms of the house and refused to cook his meals or perform any duties of a wife. The evidence shows that she acted in this manner prior to May 21st, and the court found the date of separation to be May 11, 1937, as alleged in the complaint. The separation was clearly sufficient.

■ Defendant further objects to the form of the finding on his defense of recrimination. The finding is as follows:

"This court further finds that each and every, all and singular the allegations of defendant's answer to plaintiff's complaint, and the defendant's answer to the supplemental complaint of plaintiff on file herein, and particularly with reference to paragraphs 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 17 of said supplemental answer of the defendant herein, and each and every one of the said above mentioned allegations of

the said answer and supplemental answer of the said defendant herein, are untrue and not sustained by the evidence.''

Findings by reference to allegations of the pleadings have been held sufficient. (*Stevens* v. *Stevens,* 215 Cal. 702 [12 Pac. (2d) 432] ; *Minnich* v. *Minnich,* 127 Cal. App. 1 [15 Pac. (2d) 804] ; *Stanton* v. *Stanton,* 113 Cal. App. 462 [298 Pac. 524] ; 24 Cal. Jur. 986.) Findings by reference to pleadings may be in such form that they are subject to particular objections, as, for example, where the finding is that all material allegations of a pleading are true, without indication of the allegations deemed material by the trial court. (*Holt Mfg. Co.* v. *Collins,* 154 Cal. 265 [97 Pac. 516] ; *Perkins* v. *West Coast Lumber Co.,* 120 Cal. 27 [52 Pac. 118] ; 24 Cal. Jur. 989.) But the finding in the instant case is not of this kind.

■ Defendant is not entitled to a reversal of the judgment for plaintiff by reason of any failure to find as to paragraphs 5, 15 and 16. Paragraph 5 alleged that plaintiff sought an order to evict defendant from the family home, which the court refused. The evidence as to this matter is set forth above. Paragraph 15 refers to the incident of the violin, reciting that plaintiff called defendant a thief and summoned the police. Paragraph 16 avers that plaintiff had no appreciation for defendant's kind acts, averring that he had paid her fare to this country, erected the dwelling, procured the annuity policies and made a will in her favor. Had the court found that these paragraphs of the answer were true, the strongest possible assumption in favor of defendant, it would not require a reversal. The findings favorable to plaintiff, based on the allegations of her complaint, and the findings adverse to defendant based on the allegations of the answer, amply support the judgment of divorce even if those paragraphs were true.

■ The effect of the general finding by reference to defendant's pleadings was also to find as untrue certain matters which were admitted. For example, it appears, without dispute, that plaintiff had defendant arrested for insanity on March 15, 1937, which fact is alleged in paragraph 3 of the supplemental answer. It is held above that plaintiff did not thereby forfeit her cause for divorce. Treating the general finding as a nullity in so far as its incidental effect is to find facts contrary to undisputed evidence, other facts found, for which there is support in the evidence, warrant the trial

court's conclusion that plaintiff has proved grounds for divorce and defendant has not established the defense of recrimination.

The judgment is affirmed.

Knight, J., and Ward, J., concurred.