[Civ. No. 18668. First Dist., Div. Two. Mar. 16, 1960.]

FRADIA BENAM, Appellant, v. LEON BENAM,
Respondent.

Freed & Freed, Eli Freed, Ruby Freed and Kurt W. Melchior for Appellant.

Barnett & Robertson, Philip Barnett and Rodney H. Robertson for Respondent.

PAULSEN, J. pro tem.*—Appellant and respondent were European refugees who fled to this country early in World War II. Although they had known each other in Turkey and later in France, they were not married until 1943 after they had arrived in this country. They lived together for about 13 years. They had no children.

---

*Assigned by Chairman of Judicial Council.

On January 11, 1957, appellant instituted this action. By her amended complaint, she asked for a divorce on the ground of extreme cruelty and, without describing it, demanded all of the community property. She also asked for alimony. Defendant filed a cross-complaint for divorce, also on the ground of extreme cruelty. Additionally, he sought to quiet title to three parcels of real property in San Francisco, claiming they were his separate property.

The trial court awarded a divorce to both parties, determined that an apartment building on Sacramento Street was respondent's separate property and a smaller apartment building on Capra Way and the family home on 14th Avenue were owned by the parties as joint tenants. Cash in banks, securities and interest in life insurance policies were found to be community property and were equally divided. The household furnishings and personal effects were divided between the parties by agreement, except that a valuable diamond bracelet in the possession of appellant was found to be the separate property of respondent. No alimony was allowed.

Mrs. Benam has appealed from portions of the judgment. First, she complains that the evidence is insufficient to support a finding of cruelty on her part that would warrant the granting of a divorce to her husband. The evidence of the parties was in sharp conflict but certain acts of appellant upon which respondent's decree is based are either admitted or are supported by substantial evidence. Conceding this to be true, appellant argues that such acts were provoked by respondent and were the sole cause of her conduct.

Cruelty that is provoked does not give rise to a cause of action. Provocation does not bar a cause of divorce where the conduct of the party claiming to have been provoked was out of all proportion to the provocation. (*Truax* v. *Truax*, 62 Cal.App.2d 441 [145 P.2d 88]; *Popescu* v. *Popescu*, 46 Cal.App.2d 44, 49 [115 P.2d 208].) To justify extreme cruelty by one spouse under the doctrine of provocation, the misconduct of the other spouse must itself be a serious violation of marital relations. (*De Burgh* v. *De Burgh*, 39 Cal.2d 858 [250 P.2d 598]; *Eidenmuller* v. *Eidenmuller*, 37 Cal. 364; *Popescu* v. *Popescu, supra.*)

Viewing the evidence, as we must, in the light most favorable to respondent, it appears that until about December, 1955, the parties got along reasonably well. It was then that appellant's brother and his wife began to take part in the family problems and thereafter the happy relationship

that had always existed deteriorated rapidly. At that time, there was a conference at the family home about an affidavit of support to be used in obtaining a visa for a sister of appellant who was living in Turkey. Respondent declined to sign such an affidavit on the ground that an affidavit made by her relatives in this country would be more effective. It is appellant's contention that at the time of that conversation and until their separation many months later, respondent was guilty of many acts of cruelty toward her and that she was thereby provoked into doing some of the things of which respondent thereafter complained. She denied the others.

Respondent denied all the charges made by his wife. He testified that in 1956 she would get up early in the morning, leave the home without telling him where she was going and remain away until late at night; and for prolonged periods of time she refused to speak to him; that her brother constantly made disparaging remarks to him and appellant stood by with apparent approval. He further testified that in July, 1956, appellant permanently abandoned the marital bedroom and said she did not want him; that he frequently had to cook his own meals and that many times when his wife did cook, she refused to eat with him; that these things made him extremely nervous, upset and apprehensive.

The evidence was clearly sufficient to support the finding of cruelty and the question of which party provoked the acts of the other was a matter to be determined by the trial court. Where, as here, two or more inferences can be reasonably deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. (Witkin, California Procedure, vol. 3, Appeals, § 84.)

Appellant next argues that respondent had condoned his wife's conduct. After testifying to the acts already narrated, respondent testified on cross-examination:

"Q. As far as you were concerned, there wasn't really much difficulty at all? A. Even up to today, sir, there is nothing wrong between us.

"Q. Nothing? A. No. It's—you are developing the matter for your own purpose.

. . . . . . . . . . . .

"Q. In other words, your wife has always been a satisfactory wife to you, is that correct? A. As I was to her.

"Q. Now, you say you are a satisfactory husband, but you also say that she has been a satisfactory wife? A. Yes, during

our life of marriage, and we loved each other very, very much.''

The record discloses that in the early stages of the trial, both court and counsel made earnest and repeated efforts to bring about a reconciliation and it is apparent that the above answers, when considered with the other testimony, were given by respondent conditionally and as an offer to continue those efforts. They were rejected by appellant. There was no condonation. (Civ. Code, § 116 et seq.)

 Appellant contends that there was no corroboration of respondent's testimony. Some of the facts testified to by him were corroborated by appellant's witnesses and excused by them on the ground they had been provoked.

 ''The principal purpose of the statutory requirements of corroboration is to prevent collusion, and where, as here, it is clear from the evidence that there is none, only slight additional proof is necessary.'' (*Ruggles* v. *Ruggles*, 43 Cal.2d 547, 548-549 [275 P.2d 42].) The corroboration in the instant case was sufficient.

 Appellant next argues that the court had no power to determine the ownership of the diamond bracelet.

While appellant was testifying about the money and property respondent had at the time of the marriage, she mentioned a diamond bracelet which admittedly was brought to this country by respondent. The court asked her to state the circumstances and she then explained in detail how her husband had presented it to her as a gift. Respondent moved to strike the testimony but his motion was denied. Respondent then testified that the bracelet was a family heirloom and he had simply permitted his wife to wear it and had not given it to her. The court found it was respondent's separate property.

The ownership of the bracelet was not within the issues framed by the pleadings but appellant made no objection at any time during the hearing on this question. Her objection on appeal is without merit. ''A party cannot permit an issue to be litigated and on appeal escape the consequences by claiming that the issue was not pleaded.'' (*Cockerell* v. *Title Ins. & Trust Co.*, 42 Cal.2d 284-288 [267 P.2d 16].)

 Appellant next contends that the evidence was insufficient to rebut the presumption that the Sacramento Street property was held in joint tenancy. (Civ. Code, § 164.) It is admitted that the form of the conveyance was such as to make such presumption applicable. The property was acquired May 1, 1946. The record discloses that respondent had

been a merchant and owner of a business in both Turkey and France before the advent of the Nazi regime. He was driven from Europe to Canada prior to World War II bringing with him the money he had accumulated in Europe. At the time of the marriage, he had a net worth of about $194,000. When he came to this country, he could not read, write or understand English and the methods of doing business and holding property in this country were entirely different than those familiar to him in Europe.

During the period between 1943 and 1950, respondent attended night school and gradually commenced to learn the English language. However, French was at all times used in the home.

It is admitted that appellant has never made any financial contribution toward the purchase of that property.

Respondent testified he did not understand the nature of a joint tenancy; that at the time he first started to buy real estate, he spoke only French and had to rely on the title companies and his wife's relatives; that he was told that in this country, the proper procedure for married persons who wished to acquire real property was to take it in joint tenancy; that he never intended to give his wife an interest in the property. In her deposition, appellant stated: "He always exchanged and didn't know the way of American life in the first place, how to buy; he bought, and after he trades."

Respondent admitted he had not discussed the matter of title with his wife and appellant did not testify to an understanding concerning it. However, respondent relies in part on the following allegation in the original complaint, omitted from the amended complaint: "Defendant is the owner of substantial separate property consisting primarily of apartment houses and is able to give reasonable security for the payment of alimony and such other sums as the court may order him to pay."

In *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376 at page 384 [267 P.2d 257], the court said:

"It is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading. (*Pfister* v. *Wade,* 69 Cal. 133, 138 [10 P. 369]; *Kentfield* v. *Hayes,* 57 Cal. 409, 411; *Collins* v. *Scott,* 100 Cal. 446, 453 [34 P. 1085]; *Darsie* v. *Darsie,* 49 Cal.App. 2d 491, 493 [122 P.2d 64]; *Viera* v. *Viera,* 107 Cal.App.2d 179, 180 [236 P.2d 630].) Accordingly, the only answer that may be considered as a pleading is the one modified by the

board's amendment: (*Cf. Bray* v. *Lowery*, 163 Cal. 256, 260 [124 P. 1004].)

"It is generally recognized, however, that a superseded pleading may be given some evidentiary effect, although the courts are not in accord as to the circumstances under which it may be considered. (See 4 Wigmore on Evidence [3d ed. 1940] 61, § 1067.) ▮ By a long line of decisions, it is. established in this state that such a pleading is not admissible as direct evidence to establish a fact in issue. (*Mecham* v. *McKay*, 37 Cal. 154, 165; *Ponce* v. *McElvey*, 51 Cal. 222, 223; *Morris* v. *Lachman*, 68 Cal. 109, 112 [8 P. 799]; *Osment* v. *McElrath*, 68 Cal. 466, 470 [9 P. 731, 58 Am.Rep. 17]; *Wheeler* v. *West*, 71 Cal. 126, 128 [11 P. 871]; *Stern* v. *Loewenthal*, 77 Cal. 340, 343-344 [19 P. 579]; *Ralphs* v. *Hensler*, 114 Cal. 196, 198-199 [45 P. 1062]; *Miles* v. *Woodward*, 115 Cal. 308, 316 [46 P. 1076]; *Pollitz* v. *Wickersham*, 150. Cal. 238, 248 [88 P. 911]; *Cornwell* v. *Mulcahey*, 62 Cal. App. 658, 661 [217 P. 568]; *Gajanich* v. *Gregory*, 116 Cal.App. 622, 629 [3 P.2d 389]; *Jackson* v. *Pacific Gas & Elec. Co.*, 95 Cal.App.2d 204, 209 [212 P.2d 591].) The reason for this view is that the use of superseded pleadings to such extent as to embarrass the amending party is in derogation of the policy of liberality in permitting amendments to pleadings. (See *Taft* v. *Fiske*, 140 Mass. 250, 252 [5 N.E. 621, 622].) ▮ However, where the party has testified in the action, a superseded pleading may be offered for the purpose of impeachment. (*Johnson* v. *Powers*, 65 Cal. 179, 180 [3 P. 625]; *O'Connor's Estate*, 118 Cal. 69, 71 [50 P. 4]; *Schuh* v. *R. H. Herron Co.*, 177 Cal. 13, 17 [169 P. 682]; *Williams* v. *Seiglitz*, 186 Cal. 767, 774 [200 P. 635]; *Weissbaum* v. *Eibershutz*, 211 Cal. 170, 173 [294 P. 396]; *Kambourian* v. *Gray*, 81 Cal.App. 2d 783, 789 [185 P.2d 27]; but see *Caccamo* v. *Swanston*, 94 Cal.App.2d 957, 969 [212 P.2d 246].) . . ."

The allegation in the first complaint was not offered for impeachment and was not admissible as direct proof on the subject of ownership.

▮ In *Gudelj* v. *Gudelj*, 41 Cal.2d 202 at page 212 [259 P.2d 656], it is said:

". . . 'Whether the evidence against the presumption is sufficient to overthrow it, is a question of fact.' (*DeBoer* v. *DeBoer*, 111 Cal.App.2d 500, 504 [244 P.2d 953].) ▮ However, the presumption arising from the form of the deed may not be rebutted solely by evidence as to the source of the funds used to purchase the property. . . . ▮ Nor can the pre-

sumption be overcome by testimony of a hidden intention not disclosed to the other grantee at the time of the execution of the conveyance. . . .

▮▮▮ "This principle is not contrary to the general rule that 'parol evidence is admissible to establish the absence of an intention to make a gift of either separate or community property, although the instrument of conveyance is made by the husband to the wife alone or as joint tenant with him or is from a third person to the wife or to both as joint tenants at the husband's direction.' (*Huber* v. *Huber*, 27 Cal.2d 784, 788 [167 P.2d 708].) ▮▮▮ Such evidence always is admissible when it tends to prove a mutual understanding or agreement that the other spouse was not to receive a present gift under a conveyance of property to both spouses as joint tenants. . . ."

▮▮▮ The evidence failed completely to show any agreement or understanding sufficient to rebut the presumption.

The court found that the Sacramento Street property had increased in value due to the efforts of respondent and that this appreciation in value was community property. On the ground that appellant would have adequate income, it made no award of alimony.

The portions of the judgment which grant a divorce to respondent and declare the bracelet to be his separate property are affirmed. The question of ownership of the Sacramento Street property, the disposition of the increased value thereof, and the matter of alimony are not severable, nor under this judgment, is the ownership of the Capra Way apartments and the family home severable. As to those portions of the judgment it is reversed.

Kaufman, P. J., and Draper, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 11, 1960. Schauer, J., was of the opinion that the petition should be granted.