[Civ. No. 19585.   First Dist., Div. Three.   Dec. 12, 1961.]

HAROLD TAYLOR, Plaintiff and Respondent, v. EDITH TAYLOR, Defendant and Appellant.

Howard J. Coleston for Defendant and Appellant.

Robert K. Barber for Plaintiff and Respondent.

DEVINE, J.—In this action for divorce, the husband, as plaintiff, was awarded an interlocutory decree on the ground of extreme cruelty, and the wife was denied a decree on her cross-complaint, which also was stated on the ground of cruelty. The court found that both parties were fit persons to have custody of the child, and gave physical custody to the mother, with ample visitation rights to the father, and neither party complains about this part of the decree. Nor does the wife, appellant, contend that the court abused its discretion in awarding the decree to the husband, and, indeed, she hardly could do so, in view of evidence related later in this opinion.

The first ground of the wife's appeal is that it was an abuse of discretion for the court to deny her a divorce, and that, if the court decided to award a decree to the husband,

it should have awarded a like decree to her. Some of the acts of the husband might have been adjudged to constitute cruelty if they were considered apart from all of the circumstances of the case, but we agree with respondent's contention that the trial court was within its discretion in deciding, as it no doubt did, that these acts on the husband's part were provoked by the wife and that, on balance, she was the guilty party.

Although the wife, appellant, does not claim that the judgment awarding a decree to the husband was unjustified, we must give a brief account of the wife's conduct in considering the subject of provocation.

For several months before the separation, the wife kept company with another man, despite her husband's objections and her own promises to desist, and she admitted at the trial that she would tell her husband that she was going to see a girl friend when in fact she was going out with the other man. She told her husband she loved this other man very much.

In the light of this, we consider the charges against the husband. As to quarrels or arguments, the husband testified that all of these in the last nine months of the marriage were caused by the wife's "carrying on" with the other man. There were a few episodes in which the discord went beyond words. One was an incident in which, according to the wife's own story, the parties were at a night club, "everybody was feeling good," and she, the wife, decided to mount the bandstand and was "keeping time to the music." It is her contention that her husband dragged her away, insisted on her leaving, and slapped her "all over." The husband testified that he did force her to leave, that she tried to grab the steering wheel of their automobile, and that he guessed he hit her with his elbow. Taking the husband's version as true, and considering the circumstances and the provocation, we cannot say that his actions necessitate a decree in the wife's favor.

There were occasions, according to the uncontradicted testimony of the wife, in which the husband threw her out of bed, but there is testimony by the wife that leads to an inference, at least, that she had refused marital relations to her husband at the times of these incidents; and some, if not all, of these incidents occurred after the wife had become acquainted with the other man. On one occasion, the wife testified, the husband "started choking" her with a string of beads around her neck, but this was mentioned without details as to the effects, if any, and the incident was minimized by

the wife's testimony, at another stage in the trial, that her husband had broken her string of beads, and had refused to give them back, without reference to "choking," so that the judge may have inferred that no serious attempt to harm the wife physically was made, and also by the wife's corroborating witness' testimony that the wife had said that the beads were "yanked off" and that the wife had said that the incident arose out of keeping company with the other man.

We have in mind that the usual rule as to resolution of conflicts in the evidence applies in cases where both parties have sought divorce and the court has granted it to only one of them. (*Cardew* v. *Cardew*, 192 Cal.App.2d 502, 506 [13 Cal.Rptr. 620]; *Garten* v. *Garten*, 140 Cal.App.2d 489, 496 [295 P.2d 23]; *Thompson* v. *Thompson*, 136 Cal.App.2d 539, 540 [288 P.2d 932].)

Throughout the trial the dominant fault appears to have been the wife's, and this, the court no doubt concluded, provoked the husband into many of his own intemperate acts. Conduct that is provoked does not give rise to a cause of action (*De Burgh* v. *De Burgh*, 39 Cal.2d 858, 862 [25C P.2d 598]; *Benam* v. *Benam*, 178 Cal.App.2d 837, 840 [3 Cal. Rptr. 410]; *Truax* v. *Truax*, 62 Cal.App.2d 441, 444 [145 P.2d 88]; *Popescu* v. *Popescu*, 46 Cal.App.2d 44, 49 [115 P.2d 208]) unless the conduct is out of all proportion to the provo-cation (*Popescu* v. *Popescu, supra,* at p. 50).

Appellant argues that under the decision of *De Burgh*, the decree must be awarded to her. The *De Burgh* case did not do away with, but actually affirmed, the principle that provocation by a party may prevent that party's obtaining a decree of divorce (*De Burgh* v. *De Burgh, supra,* at p. 862). The *De Burgh* case limits the rule of recrimination, which exists where both parties have been guilty, so that denial of divorce is not a necessary result, but the decision does not require a court to grant a decree to each of the parties, where one of the parties has been predominantly guilty and has provoked the other into acts which, standing by themselves, might have warranted, or even compelled, the granting of a decree. If it were so, one party often could assure himself or herself of a decree by the very force and infuriating quality of his or her own misconduct.

[  ] The second ground of appeal is that the court made an unjust disposition of the community property and that this court should revise the disposition under the provisions of

section 148 of the Civil Code, which makes the disposition of community property subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court. The court disposed of the community property in this manner, making findings as to the value of each item: the family home, worth $19,450, to be in joint tenancy, with exclusive occupancy to the wife until the minor child should reach majority or be emancipated or his custody be changed, or until the wife should remarry. The husband was ordered to pay taxes, insurance and maintenance on the home. A parcel of income producing property having a value of $7,668.02 in excess of an encumbrance, was awarded to the husband. Other lesser properties which had a total valuation of less than $2,500 were divided, about one-third to the wife and two-thirds to the husband. Altogether, the award of community property was about 65 per cent to the husband and 35 per cent to the wife (if we consider the home as being shared equally), but with the important qualification that the wife is to have occupancy of the home until the minor comes of age, is emancipated, or is placed in custody other than that of the wife, or until the wife remarries; and taxes, insurance and expenses are to be paid by the husband. Of course, the value of such provisions was not easily calculable, and the court did not find, nor was it asked to find, what that value was. Bearing in mind that the court, having given its decree for the husband only, awarded him 65 per cent, less whatever may be the value of the award of taxes, insurance and maintenance to him, and that he is obliged by the decree to pay $60 a month for the support of the child from a take-home pay of $400, we conclude that the disposition of the community property made by the trial court should not be revised.

The next point made by appellant is that the court was without power to create a joint tenancy from community property by decree of divorce, because the ways in which a joint tenancy may be created are specified in section 683 of the Civil Code (by will and by transfer) and decree of court is not one of them. Whether appellant is correct or not we need not decide, because in its conclusions of law the trial court determined that the parties should execute a deed conveying the property to themselves as grantees and as joint tenants with right of survivorship, and although the decree purported actually to create the joint tenancy, we think whatever problem exists can be solved readily by a modification of the decree to direct the parties to execute an appropriate

deed. The court's decree will operate in personam, compelling the parties to act in relation to the property whether or not the court could directly cause the same effect upon the property by its decree. (*Taylor* v. *Taylor*, 192 Cal. 71, 76 [218 P. 756, 51 A.L.R. 1074]; *Nevins* v. *Nevins*, 129 Cal.App.2d 150, 158 [276 P.2d 655].) ▉ Since an interlocutory decree purporting to make an immediate disposition of property is erroneous (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 214 [259 P.2d 656]), our ruling will be that the interlocutory decree be modified to provide that an appropriate deed of joint tenancy shall be directed by the final decree of divorce.

▉ Finally, appellant contends that the decree giving the sole right of occupancy to the wife until one of the con tingencies described above should occur, is inconsistent with the unity of possession that is an integral part of joint tenancy, and that, therefore, the purported establishment of joint tenancy is invalid. We do not believe that the exclusive occupancy given to the wife, of which the husband does not complain, for a period which could not in any event exceed some eight or nine years (until the child reaches majority), imposed by decree of divorce, will defeat a joint tenancy deed executed by the parties in compliance with a decree of divorce. The husband will enjoy possession in this, that the child will be housed in the joint tenancy property, and he, the husband, is given visiting rights.

▉ A contract between joint tenants concerning exclusive possession of the property is not incompatible with the existence of joint tenancy. (*Hammond* v. *McArthur*, 30 Cal.2d 512 [183 P.2d 1]; *Cole* v. *Cole*, 139 Cal.App.2d 691, 694 [294 P.2d 494].) ▉ We regard the granting of exclusive occupancy to the wife for the limited period mentioned above as being at least quasi-contractual in this: (1) the husband is entirely content with the arrangement, and has so stated in his brief, and is perfectly willing to execute a joint tenancy deed, occupancy to the wife to be reserved in the interlocutory decree as has been done; (2) the benefit of the occupancy is the wife's; and when the court, at oral argument of the appeal, inquired of the wife's counsel if she would prefer to have the property held by herself and her former husband as tenants in common, if this court should so modify the judgment, he replied in the negative. Obviously, the wife does not object to the joint tenancy arrangement in itself, with the extra benefit of temporary occupancy to herself and her child, but only to

the general distribution of the community property, a distribution which, as stated above, we shall not disturb. The provisions in the interlocutory decree relating to occupancy by the wife and child shall remain.

The interlocutory decree of divorce is modified by direction to the trial court to decree that the final decree of divorce shall direct the parties to execute an appropriate deed of joint tenancy, and otherwise the judgment is affirmed. Appeal from order denying motion for new trial is dismissed. Respondent is to recover his costs on appeal.

Draper, P. J., and Salsman, J., concurred.