[Civ. No. 822.    Fifth Dist.    Mar. 29, 1968.]

PANCHO BARNES, Plaintiff, Cross-defendant and Respondent, v. E. S. McKENDRY, Defendant, Cross-complainant and Appellant.

E. S. McKendry, in pro. per., for Defendant, Cross-complainant and Appellant.

W. A. McGugin for Plaintiff, Cross-defendant and Respondent.

CONLEY, P. J.—This is an appeal from the judgment in a divorce case by E. S. McKendry, the defendant and cross-complainant, against Pancho B. McKendry, his wife, more familiarly known in the history of air flights and desert land proprietorship as Pancho Barnes. Mrs. McKendry was almost completely successful in the trial of this domestic litigation; she obtained a divorce on the grounds of adultery and extreme cruelty, resisted the cross-complainant's request for a divorce for himself, and secured by decree practically all of the property as to which the parties claimed an interest.

The record shows that Mrs. McKendry filed the original complaint on August 16, 1962, in which she charged mental cruelty as a ground for relief. The pleadings show that the parties were formally married in June 1952, although both conceded that they had lived together as husband and wife "without the benefit of clergy" since about February of 1946. Both had been identified with flying; Pancho Barnes was successful as one of the early women fliers in this country, and E. S. McKendry was engaged in airplane operation in the army and commercially for a period thereafter. The record indicates that in 1946 Pancho Barnes was the victim of two minor strokes; and hypertension with the result that she was gravely ill, in part at the Mayo Clinic, and that Mr. McKendry then volunteered to take care of her and moved into her house and became an assistant in her financial ventures, principally in the desert area of California, occupying the practical position of a husband, although a formal marriage itself did not take place until a later date.

Pancho Barnes had inherited a considerable sum of money from her grandfather and had purchased land, a large part of which was ultimately condemned by the United States government for military airfields. On his part, Mr. McKendry contributed nothing of monetary value except an old automo-

bile and some $4,000; which the record indicates he expended prior to the marriage. The memorandum of decision filed by the trial judge shows that during this period Pancho Barnes transferred considerable property to the defendant without monetary consideration, and that such transfers were made with the understanding that the land and personalty involved would be retransferred to her at any time she requested; the trial judge held that Mr. McKendry held title only as a constructive trustee for Mrs. McKendry. The court also found that defendant contributed little or nothing to the premarital and marital property other than the secondhand automobile above referred to and the $4,000, which were expended on his living expenses before marriage, and that all present property, except an old airplane, which appellant says has disappeared, and an automobile, must be considered and treated as the separate property of Mrs. McKendry. The court also said that, while there appeared to be little or no community property with minor exceptions, it set aside to Mrs. McKendry any community property which, in fact, existed. It was also found that a mining claim, known as the Gypsite Mine, as to which there was a 51 percent interest standing in the name of Pancho Barnes, was the only piece of property which truly was acquired by the joint efforts of the parties, but as the parties had seen fit to have it conveyed directly to Pancho Barnes in her own name, the presumption resulted that it was her separate property; the court awarded her the interest in the mine, as her sole property.

In addition, the judge stated that as the defendant was still a man in the prime of life enjoying robust health and the plaintiff was elderly and in a deteriorated condition of health, the defendant should pay the plaintiff the sum of $1.00 a year as alimony, this being provided for the sole purpose of retaining jurisdiction.

On July 21, 1966, findings of fact and conclusions of law and an interlocutory judgment of divorce were filed giving the following property to plaintiff as her sole and separate property:

A) Real property located in the County of Kern, State of California, particularly described as follows:

1. Ten (10) one-acre lots near Rio Bravo;

2. 485 acres in section 8, township 30 south, range 38 east, M.D.B.&M.;

3. 120 acres in section 4, township 30 south, range 38 east, M.D.B.&M.;

674

4. 170 acres, more or less, in section 9, township 30 south, range 38 east, M.D.B.&M.;

5. 640 acres in section 16, township 29 south, range 38 east, M.D.B.&M.;

6. 11 acres, more or less, in section 8, township 30 south, range 38 east, M.D.B.&M., commonly known as the Jawbone Motel;

7. 40 acres, more or less, standing in the name of E. S. McKendry, commonly known as the Jawbone Cafe; and

8. That certain mining claim known as the Turtledove Mining Claim.

B) An undivided fifty-one percent (51%) interest in those certain five (5) gypsum mining claims, standing in the name of Pancho Barnes, located in the Red Rock Mining District, County of Kern, State of California, in section 28, township 30 south, range 38 east, M.D.B.&M., known and described as follows:

CHICAGO, 160 acres, and consisting of the southwest quarter of said section 28; and

NEW YORK, 154.02 acres, consisting of the southeast quarter of section 28, with the exception of 5.98 acres in the northeast corner; and

GYPSY, 20 acres, consisting of the west one-half of the northeast one-quarter of the northwest one-quarter of said section 28; and

BUFFALO (also known as Bufalo), 80 acres, consisting of the south one-half of the northwest one-quarter of said section 28; and

SAN FRANCISCO, 54.40 acres, consisting of fractional northeast quarter and fractional east half of the fractional northeast quarter of the northwest quarter of section 28, township 30 south, range 38 east, M.D.B.&M., including any and all actions appertaining thereto.

C) Personal property consisting of household furniture and effects; one 24-foot cabin cruiser and trailer; "Powercat" outboard motor; Stinson Airplane; rock and stone collection; tape recorder; typewriter; record player; dictaphone and transcriber; saddles, bridles, horses, wagons; two Borax wagons; 1966 Volkswagen; two diesel Fordson tractors; Dodge semi-truck; 1948 Chevrolet truck with winch; 1949 Dodge 2-ton truck; 1950 Ford 1½ ton truck; 1937 G.M.C. truck; 1945 Chevrolet 1½ ton truck; steam generator; two electric welders; a two-wheel horse trailer; harness; veterinary equipment; a mobile crane; a cement mixer; discs;

a Ford tractor; an old John Deere tractor; and irrigation lines.

Defendant was denied a divorce on his cross-complaint, and was awarded as his sole property one Cessna airplane and the automobile in his possession.

Defendant's motion for a new trial was denied and an appeal was filed by Mr. McKendry.

It should be noted in passing that the trial judge very patiently and considerately permitted a detailed exposition of evidence by both sides. It is noteworthy as somewhat unusual that the plaintiff represented herself during the trial, and at that time defendant and cross-complainant was represented by an experienced firm of attorneys with offices in Bakersfield, but that on the appeal the plaintiff was represented by an experienced attorney and defendant filed his own brief and argued his own case.

Appellant presents these points on the appeal:

1) That the plaintiff filed a first and second amended complaint without securing the permission of the court;

2) That the decision against him is not supported by the law and the facts of the case;

3) That the court failed to determine the responsibilities of the parties as between themselves concerning outstanding obligations incurred during the marriage;

4) That the trial court committed error in denying defendant a divorce on the cross-complaint;

5) That the trial court erroneously determined the ownership of the properties acquired by the parties during marriage; and

6) The court improperly denied attorney's fees to the defendant. We shall consider these points in order.

As already stated, the original complaint alleges mental cruelty as the ground for divorce; the pleading is obviously the work of Mrs. McKendry personally and is rather unusual in its use of language and the selection of its facts; a first amended complaint and a second amended complaint were later filed, in turn, by her; in the second amended complaint, she had the advantage of the services of an attorney. These amended complaints alleged various separate additional causes of action, including a claim of adultery, which was not pleaded in the original complaint, and a more complete allegation of extreme cruelty.

The adultery count set forth facts which occurred, in part, after the filing of the original complaint and which, therefore,

would properly constitute part of a supplemental, rather than an amended, complaint. ▓ Plaintiff did not secure any court order permitting the filing of the first and second amended complaints. However, it appears that this fact does not constitute a ground for reversing the judgment for the following reasons, any one of which is sufficient to justify a holding contrary to the appellant's claim of reversible error:

. A) The defendant failed to move to strike or to object to the new matters in the amended complaints on the ground that plaintiff should have obtained the court's permission to file amended or supplemental pleadings, and he thereby waived his right to object thereto on appeal. (*Farr* v. *Bramblett*, 132 Cal.App.2d 36, 46 [281 P.2d 372]; *Groom* v. *Bangs*, 153 Cal. 456, 459 [96 P. 503]; *Hunter* v. *Bryant*, 98 Cal. 247, 250 [33 P. 51]; *Harris* v. *Barnhart*, 97 Cal. 546, 552 [32 P. 589]);

B) By filing an answer to the second amended complaint and attending the pretrial conference without objecting to the filing of the amended pleading, there was further a waiver of the objection now urged. (*Cushman* v. *Cushman*, 178 Cal. App.2d 492, 498 [3 Cal.Rptr. 24]; *Johnson* v. *Servaes*, 210 Cal.App.2d 392, 400 [26 Cal.Rptr. 733]; *Collison* v. *Thomas*, 55 Cal.2d 490, 498 [11 Cal.Rptr. 555, 360 P.2d 51]; 39 Cal. Jur.2d 479; *Cockerell* v. *Title Ins. & Trust Co.*, 42 Cal.2d 284, 288 [267 P.2d 16]; *McClure* v. *Donovan*, 33 Cal.2d 717, 730 [205 P.2d 17].)

-··C) There was evidence that on March 9, 1963, the plaintiff found her husband in bed with Lenora Armstrong, and that the two took numerous overnight trips together, and no objection was made below to any of this evidence; the parties treated the questions of fact in response to the allegation of adultery as issues in the case and it could not afterwards be claimed that these issues should be disregarded (*Milwaukee Mechanics' Ins. Co.* v. *Warren*, 150 Cal. 346, 353 [89 P. 93]; *Benam* v. *Benam*, 178 Cal.App.2d 837, 842 [3 Cal.Rptr. 410]; *Gervaise* v. *Brookins*, 156 Cal. 110, 112 [103 P. 332]; *Nelson* v. *Department of Alcoholic Beverage Control*, 166 Cal.App.2d 783, 788 [333 P.2d 771]; *People* v. *Nahabedian*, 171 Cal.App. 2d 302, 306 [340 P.2d 1053]). The attempted point is without merit. ·

■. ▓ The attack upon the trial court's view of the evidence as set forth in the second and fourth points attempted to be made by defendant is also fruitless. An appellate court cannot, under the well-established law, retry the case or reach, on

conflicting evidence, different factual conclusions than those of the trial court. As is said in *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757] : ". . . where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; . . . we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom."

In *Smith* v. *Royal Mfg. Co.*, 185 Cal.App.2d 315, at 320 [8 Cal.Rptr. 417], it is said: "It is axiomatic that where a conflict in the evidence exists the appellate court is bound by the trial court's finding if based upon substantial evidence." (See also *Kazanteno* v. *California-Western etc. Ins. Co.*, 137 Cal.App.2d 361, 376 [290 P.2d 332] ; *Kohn* v. *Kohn*, 95 Cal. App.2d 708, 716 [214 P.2d 71] ; *Callahan* v. *Gray*, 44 Cal.2d 107, 111 [279 P.2d 963] ; *Benam* v. *Benam, supra*, 178 Cal. App.2d 837, 841.) The court below saw fit to accept the facts as stated by the plaintiff on several issues rather than the conflicting allegations of the defendant. We must, under the well-established appellate rule, accept the finding of the trial court on these matters.

The third point attempted to be made by appellant is that there was no determination by the trial court of the duty, if any, owed by either party to assume outstanding obligations, which he says were incurred during the marriage and which have not been satisfied. The reporter's transcript does not indicate that any such issue was ever seriously raised, and the pleadings are silent on the point. It is true that there is a passing reference in the record to an $18,000 indebtedness of both parties growing out of federal litigation; the failure to make a binding judgment as to any final incidence of this obligation, as to whether one or the other or both parties should be responsible, did not deprive the court of jurisdiction and cannot compel or justify a reversal. The point does not make the judgment reversible on this appeal.

The fifth point which the appellant seeks to raise is that the court committed error in its determination of the ownership of the properties acquired by the parties in the period from February 1946 to the filing of the complaint in 1962. Again, this deals with conflicting evidence; the trial court saw fit to accept the testimony offered on behalf of plaintiff and cross-defendant, and we cannot, under well-

established rules, interfere with such findings. It should be noted that there is ample room under our law of domestic relations for a trial court to find that, although a husband had certain properties in his own name, he held them as a constructive trustee for his wife. (*McKinnon* v. *McKinnon,* 181 Cal.App.2d 97, 104 [5 Cal.Rptr. 43] ; *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474, 482 [111 P. 360] ; *Dyment* v. *Nelson,* 166 Cal. 38, 40 [134 P. 938] ; *Shaw* v. *Bernal,* 163 Cal. 262, 267 [124 P. 1012] ; *Socol* v. *King,* 36 Cal.2d 342, 348 [223 P.2d 627] ; *Phelps* v. *Davies,* 126 Cal.App. 419, 422-426 [14 P.2d 922] ; Civ. Code, § 853; 49 Cal.Jur.2d 196; 26 Cal.Jur.2d 108-109; 10 Cal.Jur.2d 689.)

That there was no substantial community property, under the evidence which was accepted by the court, is in accordance with well-established principles (*Estate of Arstein,* 56 Cal.2d 239, 241 [14 Cal.Rptr. 809, 364 P.2d 33] ; *Estate of Neilson,* 57 Cal.2d 733, 742 [22 Cal.Rptr. 1, 371 P.2d 745] ; *Hicks* v. *Hicks,* 211 Cal.App.2d 144, 160 [27 Cal.Rptr. 305] ; *Kershman* v. *Kershman,* 192 Cal.App.2d 18, 21-22 [13 Cal.Rptr. 288] ; *Estate of Inman,* 148 Cal.App.2d 952, 958 [307 P.2d 953] ; *Estate of Risse,* 156 Cal.App.2d 412, 421 [319 P.2d 789] ; *Mergenthaler* v. *Mergenthaler,* 69 Cal.App.2d 525, 527 [160 P.2d 121] ).

With respect to the gypsum mining claims taken in the name of the wife, the fact that they were properly considered her separate property is established by the principles set forth in *Nevins* v. *Nevins,* 129 Cal.App.2d 150, 154 [276 P.2d 655], Civil Code section 164, and in 4 Witkin, Summary of California Law (1960) pages 2734-2735.

The last point raised by appellant is that he should have been granted his attorney's fees. Such an award, though usually made in favor of a wife rather than a husband is, however, a matter within the discretion of the trial court (Civ. Code § 137.3; *Simrin* v. *Simrin,* 233 Cal.App.2d 90 [43 Cal.Rptr. 376]), and no abuse of discretion has been shown in the instant case.

The judgment is affirmed.

Stone, J., concurred.

Gargano, J., being disqualified, did not participate.

A petition for a rehearing was denied April 24, 1968. Gargano, J., being disqualified, did not participate therein.