Filed 10/5/18; Certified for Publication 11/1/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BRUCE MARTENEY et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> ELEMENTIS CHEMICALS INC., <br><br> Defendant and Appellant. | B283411 <br><br> (Los Angeles County Super. Ct. Nos. BC 489395, JCCP 4674) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Charles F. Palmer, John J. Kralik, Judges.  Affirmed.

Dehay & Elliston, William H. Armstrong, Jennifer D. Fitzpatrick, and Catherine M. Reichhold for Defendant and Appellant.

Weitz & Luxenberg, Benno Ashrafi, and Josiah Parker for Plaintiffs and Respondents.

_____

In the underlying action, Marty and Marie Marteney prevailed on their personal injury and loss of consortium claims against appellant Elementis Chemicals, Inc. (Elementis). While Elementis's appeal from the judgment on those claims was pending, Marty Marteney died, and respondents became parties to the action in order to assert wrongful death claims against Elementis. After a jury found that respondents were entitled to damages, the trial court determined Elementis's liability for damages in light of prior settlements (Code Civ.Proc., § 877),[1] and rendered a judgment in respondents' favor. Elementis contends the court lacked jurisdiction to enter that judgment, and erred in valuing the settlement credits to which Elementis was entitled. We reject those contentions and affirm.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Respondents Bruce Marteney, Steve Marteney, and Chrystal Dahlstein are the adult children of Marty and Marie, who were the original plaintiffs in the underlying action.[2] We summarize the proceedings culminating in the judgment in favor of Marty and Marie before describing the events relevant to the appeal before us.

---

[1] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

[2] Because the original plaintiffs and two respondents share their surname, we refer to the original plaintiffs by their first names.

A.    *Trial and Judgment on Original Complaint*

In August 2012, Marty and Marie commenced the action, asserting claims for negligence, breach of warranties, strict liability, and loss of consortium against Elementis, Union Carbide Corporation (UCC), and other defendants involved in the manufacture and marketing of asbestos-containing products. Their complaint alleged that Marty suffered from mesothelioma due to his exposure to asbestos from the defendants' products.

Prior to trial, Marty and Marie entered into settlements with several defendants totaling $2,390,000. As a result of the settlements and other dispositions, at the commencement of jury selection, UCC and Elementis were the only defendants to appear at trial. In July 2013, a jury returned special verdicts in favor of Marty and Marie on their claim for strict liability, and awarded them damages totaling $1,525,000. That sum comprised $400,000 in economic damages to Marty and Marie, $375,000 in noneconomic damages to Marty, and $750,000 in noneconomic damages to Marie. The jury also allocated UCC a five percent share of comparative fault, and Elementis a three percent share of comparative fault.

In August 2013, Marty and Marie sought determinations of UCC's and Elementis's liability for damages. The trial court (Judge John J. Kralik) found that 20 percent of the settlement funds were reasonably allocated to future wrongful death claims. In view of that allocation, the court found that the settlement credits to which UCC and Elementis were entitled reduced their liability for economic damages "to zero" (§ 877). The court also ruled that UCC's and Elementis's shares of comparative fault --

3

but not the existence of the settlement funds -- determined their liability for noneconomic damages (Civ. Code, § 1431.2).[3]

In October 2013, the trial court entered a judgment awarding damages totaling $56,250 against UCC, and damages totaling $33,750 against Elementis, reflecting its determinations that they were liable solely for noneconomic damages proportionate to their respective shares of comparative fault. Later, in December 2013, the judgment was amended to include an award of costs. UCC and Elementis noticed an appeal from the judgment.

B.      *Proceedings Regarding Respondents' Complaint*

On January 16, 2015, while that appeal was pending, Marty died. In July 2015, Marie, acting as an individual and as representative of Marty's estate, together with respondents, filed a first amended complaint for wrongful death (FAC) against UCC and Elementis, asserting claims for negligence, breach of warranties, and strict liability.

After Elementis answered the FAC, the parties stipulated to a stay of proceedings regarding the FAC until remittitur issued in the appeal. Later, in an unpublished opinion (*Marteney v. Union Carbide Corporation, et al.* (Oct. 10, 2015, B252711), we affirmed the judgment in favor of Marty and Marie. Our remittitur issued on December 31, 2015.

---

[3]      In actions for personal injury and wrongful death, a nonsettling defendant is ordinarily liable for an amount of noneconomic damages proportionate to its share of comparative fault, without any offset for settlements by other defendants encompassing noneconomic damages. (See *Garcia v. Duro Dyne Corp.* (2007) 156 Cal.App.4th 92, 102.)

4

Prior to trial on the FAC, Marie voluntarily dismissed her wrongful death claims, and respondents settled their claims against UCC for $75,000. In early September 2016, following a trial, a jury found that respondents suffered economic damages totaling $195,000 and noneconomic damages totaling $163,000. The jury allocated the damages as follows: to Bruce Marteney, $87,000 in economic damages and $44,000 in noneconomic damages; to Steve Marteney, $54,000 in economic damages and $44,000 in noneconomic damages; and to Chrystal Dahlstein, $54,000 in economic damages and $75,000 in noneconomic damages.

On September 27, 2016, the trial court (Judge Charles F. Palmer) entered judgment in favor of respondents on their wrongful death claims against Elementis. The judgment awarded economic damages totaling $195,000, subject to further adjustment due to prior settlements. The judgment also awarded noneconomic damages totaling $4,890, predicated on the jury's findings and the prior allocation of a three percent share of comparative fault to Elementis. The noneconomic damages were apportioned as follows: to Bruce Marteney, $1,320; to Steve Marteney, $1,320; and to Chrystal Dahlstein, $2,250.

In October 2016, Elementis requested a determination of settlement credits (§ 877). After concluding that Elementis was entitled to a credit based solely on respondents' settlement with UCC -- and not on Marty's and Marie's settlements -- the trial court found that Elementis was liable for economic damages totaling $154,149.25. In February 2017, the court amended the judgment to reflect that finding.

In March 2017, Elementis filed a motion to vacate the judgment in favor of respondents as void, contending the appeal from the 2013 judgment in favor of Marty and Marie foreclosed

5

all proceedings relating to the FAC.  On March 29, 2017, the trial court denied Elementis's motion.  This appeal followed.

## DISCUSSION

Elementis contends (1) that the 2017 judgment in favor of respondents is void, and (2) that the trial court erred in determining the settlement credits to which Elementis was entitled.  For the reasons discussed below, we reject those contentions.

### A. *2017 Judgment*

We begin with Elementis's challenge to the 2017 judgment, which Elementis contends is void for "lack of jurisdiction."

#### 1. *Standard of Review*

In order to demonstrate that a judgment is void, a party may file a motion to vacate the judgment in the pertinent action or an independent action in equity.  (*Preston v. Wyoming Pacific Oil Co.* (1961) 197 Cal.App.2d 517, 527.)  Here, Elementis chose to attack the 2017 judgment by means of a motion under section 473, subdivision (d), which provides in pertinent part:  "The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order."

Under subdivision (d) of section 473, a party may challenge judgments that are ""absolutely void.""  (*Tearlach Resources Limited v. Western States Internat., Inc.* (2013) 219 Cal.App.4th 773, 779 (*Tearlach*), quoting *Andrews v. Superior Court* (1946) 29 Cal.2d 208, 214-215 (*Andrews*).)  That defect occurs when the trial court rendering the judgment lacked jurisdiction in the "fundamental sense," that is, lacked authority over the subject matter or parties.  (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1330.)  Such a

6

judgment ""is, in legal effect, no judgment. . . .  Being worthless in itself, all proceedings founded upon it are equally worthless. [Citation.]" [Citation.]" (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1240, quoting *Bennett v. Wilson* (1898) 122 Cal. 509, 513-514.)  Because an absolutely void judgment is a nullity, it "'may be attacked anywhere . . . whenever it presents itself.'" (*Andrews, supra,* 29 Cal.2d at p. 214, quoting *Estate of Pusey* (1919) 180 Cal. 368, 374.)

Subdivision (d) of section 473 also permits challenges to judgments that are voidable, rather than absolutely void. (*Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 752; see *Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 210.)  That defect arises when the trial court, in rendering the judgment, possessed fundamental jurisdiction over the subject matter and the parties, but acted "in excess of its jurisdiction." (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661 (*American Contractors*).)  Generally, a court exceeds its jurisdiction only by contravening certain defined limitations on the exercise of its powers (*People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120, 125); ordinary mistakes of law or procedure do not constitute acts in excess of jurisdiction (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 287, p. 894).

An error in excess of jurisdiction does not render a judgment a nullity; rather, the judgment "is valid until it is set aside." (*American Contractors, supra,* 33 Cal.4th at p. 661.) Ordinarily, acts in excess of jurisdiction are subject to harmless error analysis, that is, they support a reversal of the judgment only upon a showing of prejudice.  (See *People v. Williams* (2006) 40 Cal.4th 287, 301.)  Furthermore, challenges to a judgment

7

based on the defect may be barred under principles of estoppel, forfeiture, and waiver. (*In re Griffin* (1967) 67 Cal.2d 343, 347 (*Griffin*); *People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6.)

Before the trial court and on appeal, Elementis has offered two distinct arguments in support of its contention that the 2017 judgment is void for want of jurisdiction. Elementis maintains (1) that the appeal from the 2013 judgment in favor of Marty and Marie removed the court's jurisdiction to permit the filing of the FAC, and (2) that the underlying action "was dead" after we affirmed the 2013 judgment and Elementis paid the damages owed to Marty and Marie.

As the facts material to Elementis's contentions are undisputed, the character of the purported defect determines the standard of review applicable to the ruling on the section 473 motion. To the extent Elementis asserts that the 2017 judgment is absolutely void for want of subject matter jurisdiction, our review is de novo. (*Tearlach*, *supra*, 219 Cal.App.4th at p. 780.) To the extent Elementis may have identified an act potentially in excess of jurisdiction, we review the ruling for an abuse of discretion. (See *Talley v. Valuation Counselor Group, Inc.* (2010) 191 Cal.App.4th 132, 146.)

2.      *Filing of the FAC*

Elementis contends the automatic stay triggered by the appeal from the 2013 judgment removed the trial court's subject matter jurisdiction to accept the filing of the FAC. As explained below, we disagree.

a.      *Governing Principles*

Under section 916, subdivision (a), "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order,"

8

unless the matter falls within enumerated exceptions.  When triggered, the automatic stay bars all proceedings that "directly or indirectly seek to 'enforce, vacate or modify [the] appealed judgment or order'" or "substantially interfere with the appellate court's ability to conduct the appeal." (*Varian Medical Systems, Inc. v. Defino* (2005) 35 Cal.4th 180, 189-190 (*Varian*), quoting *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629 (*Elsea*).)  The function of the automatic stay rule is "'to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided.'" (*Varian, supra*, at p. 189, quoting *Elsea, supra*, at p. 629.)

The principal effect of the automatic stay is to remove the trial court's subject matter jurisdiction relating to proceedings within the scope of the appeal.  As our Supreme Court has explained, the stay divests the trial court of subject matter jurisdiction "over any matter embraced in or affected by the appeal during the pendency of that appeal." (*Varian, supra,* 35 Cal.4th at pp. 196-197.)  Thus, section 916 renders any subsequent trial court proceedings on such matters "void -- and not merely voidable." (*Id*. at p. 198.)  However, the automatic stay rule does not bar collateral proceedings that do not affect the judgment on appeal.  (*Id*. at p. 191.)

The crux of Elementis's contention is that due to the automatic stay triggered by the appeal from the 2013 judgment, the filing of the FAC was a jurisdictional error rendering the 2017 judgment void.  Because the FAC contained wrongful death claims, Elementis's contention implicates the principles governing those claims.  Generally, wrongful death claims are legally distinct from claims for personal injury and loss of consortium.  (*Wilson v. John Crane, Inc.* (2000) 81 Cal.App.4th 847, 862 (*Wilson*).)  "A cause of action for wrongful death is a

9

statutory claim (§§ 377.60-377.62) that compensates specified heirs of the decedent for losses suffered as a result of a decedent's death." (*San Diego Gas & Electric Co. v. Superior Court* (2007) 146 Cal.App.4th 1545, 1550-1551 (*San Diego Gas*).) Although each heir has a "personal and separate" claim, the wrongful death statutes ordinarily require joint litigation of the heirs' claims in order to prevent a series of suits against the tortfeasor. (*Cross v. Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 692, 694 (*Cross*); *San Diego Gas*, *supra*, at p. 1551.) However, that requirement does not deprive a court of subject matter jurisdiction to try a wrongful death action when an heir fails to participate in the action. (*Ruttenberg v. Ruttenberg* (1997) 53 Cal.App.4th 801, 808; see *Cross*, *supra*, at p. 692.)

Elementis's contention also implicates the trial court's authority to permit amendments to the original complaint, as the FAC introduced new claims and parties into the action. Generally, "the trial court has wide discretion in allowing the amendment of any pleading [citations]." (*Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 135-136; § 473, subd. (a)(1).) Furthermore, in suitable circumstances, the court may permit new parties to join or intervene in an action as plaintiffs (§§ 378, 387). Nonetheless, when an amended complaint seeks to add new plaintiffs and claims, the court's discretion is tightly confined by considerations of due process -- that is, potential unfairness to the defendant -- and the running of the applicable statute of limitations. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 1217, 1234-1235, pp. 652, 671-672.)

            b.      *Analysis*

We conclude that notwithstanding Elementis's appeal from the 2013 judgment, the filing of the FAC reflected no jurisdictional error sufficient to render the 2017 judgment void.

10

Our focus is on respondents' wrongful death claims in the FAC, as any error capable of invalidating the 2017 judgment -- if it exists -- must relate to those claims. That is because the 2017 judgment encompassed *only* respondents' claims, which -- as noted above (see pt.A.2.a., *ante*) -- were separate from Marie's wrongful death claim, which she dismissed prior to trial on the FAC.

In rejecting Elementis's challenge to the 2017 judgment, the trial court concluded that the parties' stipulation staying proceedings on the FAC acted to prevent any material jurisdictional error. The court stated: "The only actions taken by the superior court[] between the filing of the notice of appeal and the issuance of the court of appeal['s] remittitur were . . . to accept the [FAC] for filing[] and . . . to accept for filing the stipulation staying the [FAC] until the remittitur was issued . . . . Neither of these actions, in any way, had any impact on the effectiveness of the appeal. . . . [I]t appears to the court that the acceptance of the [FAC] . . . [and] the sub-proceedings of the court were in [no] way inconsistent with the . . . remittitur." We discern no error in those determinations.

In our view, the appeal from the 2013 judgment did not remove the trial court's subject matter jurisdiction over the FAC, insofar as it asserted respondents' wrongful death claims. By accepting the FAC for filing, the trial court effectively permitted respondents -- who were not parties to the original action -- to intervene in order to assert their wrongful death claims (see *Houze v. Kovacevich* (1941) 44 Cal.App.2d 936, 937 [affirming judgment in wrongful death action in favor of plaintiff by intervention].). After an appeal from a judgment has been perfected, section 916 does *not* deprive the trial court of subject matter jurisdiction to permit a party to intervene in the action, provided the intervention does not relate to a matter embraced by

the judgment.  (*Mallick v. Superior Court* (1979) 89 Cal.App.3d 434, 437-438.)  That is the case here:  because respondents' claims were based on their father Marty's postjudgment death and were separate from Marie's wrongful death claim (*Cross, supra,* 60 Cal.2d at p. 692), they did not implicate the 2013 judgment in favor of Marty and Marie in any way.  Accordingly, the appeal did not deprive the trial court of subject matter judgment over respondents' claims.

Moreover, even had the trial court exceeded its jurisdiction in permitting respondents to assert their claims while the appeal was pending, Elementis failed to preserve any such contention of error.  "'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method . . . .  The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . .  Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.'  [Citation.]"  (*Doers v. Golden Gate Bridge etc. Dist. (*1979) 23 Cal.3d 180, 184-185, fn. 1, italics omitted.)

Generally, the failure to object in a timely manner to the assertion of new claims bars contentions of error predicated on that irregularity.  In *Groom v. Bangs* (1908) 153 Cal. 456, 458 (*Groom*), a married couple filed a complaint for personal injury, alleging that the defendant doctor engaged in medical malpractice regarding the wife.  After the wife died, with leave from the trial court, the husband filed an amended complaint, asserting a single wrongful death claim as the sole plaintiff.

(*Ibid*.)  In successfully demurring to the amended complaint, the defendant contended only that the wrongful death allegations were insufficient.  (*Id*. at pp. 457-458.)

Upon determining that the amended complaint stated a wrongful death claim, our Supreme Court reversed, even though it recognized that the trial court had erred in permitting the husband to assert that claim.  (*Groom*, *supra*, 153 Cal. at pp. 458-459.)  The Supreme Court stated:  "[The wrongful death claim] is a cause of action entirely different from that sued on in the original complaint.  The filing of the amended . . . complaint was, in effect, a discontinuance of the previous action, and the beginning of a new action for a new cause.  This method of procedure was irregular, but no objection was made upon that ground."  (*Id*. at p. 459.)  In view of the absence of a timely objection, the court ruled that the defendant had failed to preserve that irregularity as a contention of error.  (*Ibid*.)

In *Barnes v. McKendry* (1968) 260 Cal.App.2d 671, 672, a woman filed a complaint for divorce containing a single charge of mental cruelty.  Later, without securing leave from the trial court, she filed amended complaints asserting new and different causes of action.  (*Id*. at p. 676.)  The husband never objected to the amended complaints throughout the proceedings, which resulted in a judgment unfavorable to him.  (*Id*. at p. 676.)  In affirming the judgment, the appellate court found that the husband had failed to preserve any contentions of error based on the wife's assertion of new claims without leave to amend.  (*Id*. at p. 676.)

We reach a similar conclusion here.  "When . . . the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action

13

in excess of jurisdiction." (*Griffin, supra*, 67 Cal.2d at p. 347.) Although respondents appear to have filed the FAC without obtaining leave from the trial court, Elementis answered the FAC, agreed to the stipulation regarding the FAC, and following our remittitur, participated without objection in the wrongful death proceedings.[4] Elementis challenged the filing of the FAC only after the entry of the 2017 judgment, when it asked the trial court to vacate that judgment as void. Accordingly, Elementis may not challenge the 2017 judgment on the basis of procedural irregularities constituting errors in excess of jurisdiction. (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 166 ["[A]n appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal"]; see *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1687 [party's belated postverdict objection failed to preserve contention of error regarding jury instructions it affirmatively approved].)

In an effort to show that the automatic stay barred the filing of the FAC, Elementis contends that because the FAC "superseded and nullified" the original complaint, it necessarily implicated matters embraced by the 2013 judgment.[5] We disagree. As explained above, any jurisdictional error capable of

---

[4]     We note that the record provided by Elementis contains no order permitting the filing of the FAC, and that the parties dispute whether there was such an order.

[5]     Generally, "'an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading. [Citations.]' [Citation.] 'Such amended pleading supplants all prior complaints. . . . [Citations.]' [Citation.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884.)

14

rendering the 2017 judgment void must attach to respondents' claims in the FAC, as that judgment resolved only respondents' claims. However, because respondents became parties to the action after the 2013 judgment, the FAC effectively constituted *their* original complaint, as it marked "the beginning of a new action for a new cause" by them. (*Groom*, *supra*, 153 Cal. at p. 459.) The FAC thus did not implicate the 2013 judgment, insofar as the FAC contained respondents' claims. In sum, Elementis has failed to show any basis for invalidating the 2017 judgment due to the filing of the FAC.

3. *Finality of 2013 Judgment*

Relying on the principles governing final judgments, Elementis contends our affirmance of the 2013 judgment limited the trial court's subject matter jurisdiction to the enforcement of the 2013 judgment. Elementis argues that after our remittitur issued, the 2013 judgment became the final judgment in the action, and no proceedings were permitted on the FAC. We reject that contention.

Generally, the term "'final,'" as applied to judgments, has several meanings. (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 303-304.) Under the "'one final judgment'" rule, an appeal can be taken only from a judgment that completes the disposition of *all* the claims between the pertinent parties. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 (*Morehart*).)[6] Furthermore, once such a judgment is affirmed on

---

[6]     The "one final judgment" rule is codified in section 904.1, subdivision (a). (*Morehart, supra,* 7 Cal.4th at p. 741.) "Subject to exceptions not applicable here, that subdivision authorizes an appeal '[f]rom a judgment, except . . . an interlocutory judgment,' i.e., from a judgment that is not intermediate or nonfinal but is

appeal, it becomes final in another manner. "'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void."'" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701, quoting *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 656.)

Nothing in these principles foreclosed the proceedings on respondents' wrongful death claims after our remittitur issued in the appeal from the 2013 judgment. An appeal of a judgment final for purposes of the one "final judgment" rule does not remove the trial court's jurisdiction to conduct litigation of claims outside the scope of that judgment, that is, involving other parties. (*Rocca v. Steinmetz* (1922) 189 Cal. 426, 428.) That is because "[i]t is well settled that where parties have distinct interests, there can be a separate, final, and appealable judgment for each." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 109, p. 174.) As explained above (see pt. A.2.b, *ante*), respondents' wrongful death claims were separate and distinct from those resolved by the 2013 judgment in favor of Marty and Marie. Thus, neither the appeal from the 2013 judgment nor our

_____

the one final judgment. [Citation.] Judgments that leave nothing to be decided between one or more parties and their adversaries, or that can be amended to encompass all controverted issues, have the finality required by section 904.1, subdivision (a). A judgment that disposes of *fewer* than all of the causes of action framed by the pleadings, however, is necessarily 'interlocutory' [citation], subd. (a)), and not yet final, as to any parties between whom another cause of action remains pending." (*Ibid.*)

remittitur in that appeal deprived the trial court of subject matter jurisdiction over respondents' wrongful death claims.

Elementis contends the trial court necessarily lacked jurisdiction over respondents' claims because they were first alleged following the 2013 judgment, arguing that "[w]hat happened here was not the continuation of a lawsuit after one of several parties has obtained [a] judgment." However, because the assertion of respondents' claims -- if improper -- was nothing more than an error in excess of jurisdiction (see pt. A.2.b, *ante*), the proceedings on those claims also amounted only to such an error. (See *Sosnick v. Sosnick* (1999) 71 Cal.App.4th 1335, 1339-1340 [consolidation of wife's tort action against husband with their divorce action after an appealable judgment was entered in the divorce action was an error in excess of jurisdiction].) As explained above, Elementis has failed to preserve contentions based on procedural irregularities of that type. In short, the trial court did not err in denying Elementis's section 473 motion to vacate the 2017 judgment.

B.    *Section 877 Settlement Credits*

Elementis contends the trial court erred in determining the settlement credits to which it was entitled under section 877. In assessing Elementis's liability for respondents' economic damages, the court found that Elementis was entitled to a settlement credit based on respondents' $75,000 settlement with UCC, but declined to award any credit based on Marty's and Marie's settlements. Elementis has failed to demonstrate error in that ruling.

1.    *Governing Principles*

Section 877 specifies circumstances under which an award of economic damages against a defendant may be offset by a codefendant's settlement. (*Hackett v. John Crane, Inc.* (2002) 98

17

Cal.App.4th 1233, 1239 (*Hackett*).) Under the statute, a release or covenant not to sue, when "given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort," has the effect of "reduc[ing] the claims against the others in the amount stipulated by the release . . . or the covenant, or in the amount of the consideration paid for it, whichever is the greater." (§ 877, subd. (a).)[7] Section 877 promotes the recovery of damages, the settlement of litigation, and the equitable apportionment of liability among tortfeasors, while limiting the double recovery of damages. (*Dell'Oca v. Bank of New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531, 560 (*Dell'Oca*).)[8]

As discussed further below, Elementis contends that under section 877, the agreements "given" by Marty and Marie to the

---

[7] Under section 877, a defendant's good faith settlement has other effects, including "cut[ting] off the right of other defendants to seek contribution or comparative indemnity from the settling defendant." (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 873; § 877, subd. (b).)

[8] The statute has been interpreted broadly to achieve those goals. (*Dell'Oca, supra*, 159 Cal.App.4th at p. 560.) Under section 877, to be a "tortfeasor[]," a party must be potentially liable in tort. (*Tiffin Motorhomes, Inc. v. Superior Court* (2011) 202 Cal.App.4th 24, 31.) However, it need not be shown that the party did, in fact, commit a tort. (*Dell'Oca, supra*, at pp. 560-561). Furthermore, whether parties constitute "joint" tortfeasors under section 877 "depends upon whether they caused 'one indivisible injury' or 'the same wrong.' [Citations.] The 'same wrong' may emanate from two successive independent torts and does not require unity of purpose, action, or intent by the two or more tortfeasors. [Citations.] Also, the plaintiff need not allege the

18

settling defendants prior to the 2013 judgment operated to "reduce" *respondents'* claims against Elementis, even though respondents were not signatories to the agreements. Generally, courts have construed section 877 to diminish a nonsettling defendant's liability to the plaintiff executing the settlement. (*Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1018; *Bobrow/Thomas & Associates v. Superior Court* (1996) 50 Cal.App.4th 1654, 1660; *Southern Cal. Gas Co. v. Superior Court* (1986) 187 Cal.App.3d 1030, 1037.) As our Supreme Court has explained, under the statute, "when one of a number of tort defendants enters into a settlement agreement *with a plaintiff,* the nonsettling defendants' liability *to the plaintiff* is reduced by the amount of the settlement." (*Bay Development, Ltd. v. Superior Court*, *supra*, at p. 1018, italics added.)

Elementis's contention thus implicates the principles by which persons may be bound by, or subject to, a settlement agreement they did not execute. Generally, the settlement of claims "by one party plaintiff . . . does not operate to bar the actions of other plaintiffs." (*Estate of Kuebler v. Superior Court* (1978) 81 Cal.App.3d 500, 504.) Nonetheless, nonsignatories to a settlement agreement may be subject to it under special circumstances, for example, when they participate in the negotiation of the agreement while recognizing that it affects their interests (*Phelps v. Kozakar* (1983) 146 Cal.App.3d 1078, 1083-1084), or when the agreement is negotiated by parties purporting to act on their behalf, and they accept the benefits of the agreement (see *Alvarado Community Hospital v. Superior Court* (1985) 173 Cal.App.3d 476, 480-484).

---

same tort against the tortfeasors . . . . [Citation.]" (*In re JTS Corp.* (9th Cir. 2010) 617 F.3d 1102, 1116-1117.)

19

### 2. *Underlying Proceedings*

In July 2013, following the trial on the claims in the original complaint, the jury awarded Marty and Marie $400,000 in economic damages. Later, Marty and Marie sought determinations of the settlement credits to be applied to offset the jury's award of economic damages against UCC and Elementis. Marty and Marie contended that 50 percent of the funds from their pretrial settlements were properly allocated to claims not litigated at trial -- namely, prospective wrongful death claims based on Marty's death -- and that any credits due UCC and Elementis should be appropriately reduced to reflect that allocation. They maintained that UCC and Elementis were jointly and severally liable for $86,551.50 in economic damages, after the jury's award was offset by credits based on an allocation of 50 percent of the settlement funds to wrongful death claims.

UCC and Elementis opposed the determinations requested by Marty and Marie. Regarding economic damages, they contended that because Marty and Marie failed to show that the settlement agreements allocated any funds to prospective wrongful death claims, the appropriate settlement credits were sufficiently large to "reduce the economic damages to zero."

The trial court (Judge Kralik) found that only 20 percent of the settlement funds were reasonably allocated to future wrongful death claims. In view of that conclusion, the court further found that UCC and Elementis had no liability for economic damages, as the settlement credit offsets to which they were entitled exceeded the jury's $400,000 award for economic damages. The 2013 judgment reflected that determination.

In September 2016, following the jury trial on respondents' wrongful death claims, the trial court (Judge Palmer) entered judgment in favor of respondents and against Elementis. The

20

judgment awarded economic damages totaling $195,000, in accordance with the jury's findings, with the proviso that "offsets for pre-verdict settlements" would be determined in future proceedings.

In October 2016, Elementis requested settlement credits based on Marty's and Marie's settlements and respondents' settlement with UCC. Elementis argued that respondents were bound by the prior finding (by Judge Kralik) that 20 percent of the funds from Marty's and Marie's settlements were properly allocated to then-future wrongful death claims. In view of that contention, Elementis asserted that respondents' net recovery for economic damages was "zero dollars," as the settlement credit it sought exceeded the jury's total award for economic damages.

Respondents contended any settlement credit must be based solely on their $75,000 settlement with UCC, arguing that assigning credits to Elementis based on Marty and Marie's settlements "would be contrary to . . . section 877." Respondents further contended the prior finding regarding Marty's and Marie's settlements did not bind them because they "were never parties to [those settlements] . . . , never granted permission to anyone to settle their claims, and . . . never agreed to settle/waive their claims against any defendant other than [UCC]." Respondents thus maintained that Elementis was entitled to a credit amounting to $40,851.75, based only on the UCC settlement.

The trial court agreed with respondents, concluding that "there [was] no basis for subjecting the verdict in [respondents'] wrongful death trial to offset by the settlements obtained by Marty and Marie." The court found that respondents had not participated in the litigation of Marty's and Marie's claims or in the negotiation of their settlement agreements, and that Marty and Marie agreed "to indemnify the settling defendants" in the

21

event Marty's heirs later pursued a wrongful death case against them. The court determined Elementis's aggregate liability for economic damages to be $154,149.25 -- reflecting a settlement credit of $40,851.75 -- and entered an amended judgment in accordance with that finding.

3.    *Analysis*

As explained below, we discern no error in the trial court's determinations. "We generally review a ruling granting or denying a section 877 settlement credit under the deferential abuse of discretion standard. [Citation.] To the extent that we must decide whether the trial court's ruling was consistent with statutory requirements, we apply the independent standard of review. [Citation.]" (*Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1044.)

Although no decision has directly examined when claims asserted by nonsignatories to a settlement agreement are properly subject to settlement credits under section 877, we find guidance on Elementis's contention from *Wilson, supra,* 81 Cal.App.4th 847 and *Hackett, supra,* 98 Cal.App.4th 1233. In *Wilson,* a husband and wife asserted claims for personal injury and loss of consortium against numerous defendants, alleging that the asbestos products they made or marketed caused the husband's mesothelioma. (*Wilson, supra,* at pp. 850-851.) Prior to trial, the plaintiffs entered into settlements with all but one defendant. The agreements encompassed funds for potential wrongful death claims by the husband's heirs, and contained undertakings by the plaintiffs to hold the settling defendants harmless from any wrongful death action against them. (*Id.* at p. 859.) After a jury found the nonsettling defendant liable for economic damages, the trial court excluded all settlement funds allocated to potential wrongful death claims in calculating the

22

settlement credits to which the nonsettling defendant was entitled. (*Id*. at pp. 851, 860.)

The appellate court affirmed the exclusion of the settlement funds from the calculation because the plaintiffs had asserted no wrongful death claim, reasoning that "the settlement of [a] claim may serve as a credit only against a judgment on the same claim." (*Wilson, supra*, 81 Cal.App.4th at p. 862.) In so holding, the court observed that the settlement agreements had not, in fact, settled the heirs' wrongful death claims, but required only that the plaintiffs hold the settling defendants harmless in the event of such claims. (*Ibid*.) The court remarked: "This raises the possibility that the heirs might yet bring their independent claims against [the nonsettling] defendant . . . and might then recover damages some portion of which had effectively already been paid to [the] plaintiffs by other defendants. If the heirs were shown to have actually received the sums earlier paid in settlement, then of course those sums would be available for treatment as a settlement credit. If they had not received the sums, then the decedent might be found -- or deemed -- to have received them as an agent of the heirs, such that the sums so received would still be available as credits against settlement. Alternatively, the defendant might be allowed an equitable claim back against the decedent's estate for sums which should have been applied to offset the heirs' eventual claims. We need not determine how such a hypothetical situation would in fact be best resolved." (*Id*. at pp. 862-863, fn. omitted.)

*Hackett* involved similar plaintiffs and similar claims against multiple defendants. (*Hackett, supra*, 98 Cal.App.4th at pp. 1236-1237.) Prior to trial, the plaintiffs settled with many of the defendants. (*Id*. at p. 1237.) Included in the agreements were express releases of future wrongful death claims by heirs, as well

23

as undertakings to hold the defendants harmless in the event of such claims.  (*Ibid*.)  After a jury awarded noneconomic damages against a nonsettling defendant, the trial court found that 34 percent of the settlement funds were allocated to future wrongful death actions, and determined the defendant's settlement credit in light of that finding.  (*Id*. at pp. 1238, 1241.)

On appeal, the defendant contended an excessive amount of the settlement funds had been allocated to future wrongful death actions, arguing that the trial court failed to consider that the plaintiffs' sons were not signatories to the settlement agreements, and thus were free to assert such actions.  (*Hackett*, *supra*, 98 Cal.App.4th at p. 1241.)  Pointing to *Wilson*, the appellate court rejected the contention, concluding that such future wrongful death actions were reasonably viewed as only a "theoretical[] possibil[ity]" in view of the "hold harmless" provisions of the settlement agreements, which discouraged those actions against the settling defendants.[9]  (*Hackett*, *supra*, at p. 1241.)

---

[9]    The appellate court stated:  "[The plaintiff] entered into hold harmless agreements with the settling defendants on behalf of himself and his estate.  Although it is theoretically possible that the sons could sue *and* that no settlement proceeds would be left to fulfill the hold harmless agreements *and* that the defendants would not prevail under any one of several possible grounds for claiming an offset, it is plain that the settling defendants did not believe they were paying $4.5 million for an empty promise.  The agreements make it clear that the settling defendants believed and expected there would be no future claims by the heirs.  [The nonsettling defendant here] advanced a similar contention in the *Wilson* case."  (*Hackett, supra,* 98 Cal.App.4th at p. 1241.)

24

Although *Wilson* and *Hackett* examine the section 877 credit due a nonsettling defendant in an action for personal injury and loss of consortium, their discussions are instructive regarding the distinct issue presented here, namely, the section 877 credit due the nonsettling defendant in a subsequent wrongful death action by the original plaintiffs' heirs. Viewed together, *Wilson* and *Hackett* establish that when the heirs are not signatories to a settlement executed by the original plaintiffs, the settling defendant's key safeguard against a subsequent wrongful death action by the heirs is a "hold harmless" provision in the settlement binding on the original plaintiffs, *unless* the settlement is also binding on the heirs. (*Wilson*, *supra*, 81 Cal.App.4th at pp. 862-863; *Hackett*, *supra*, 98 Cal.App.4th at p. 1241.) The latter may occur where the plaintiffs, in negotiating the settlement, act as the heirs' agents, or the heirs actually receive the settlement funds allocated to wrongful death claims. (*Wilson*, *supra*, at pp. 862-863.) When those situations obtain, a nonsettling defendant is potentially entitled to a section 877 credit in the heirs' wrongful death action because they are bound by the settlement. (*Ibid*.)

Here, Elementis failed to show that respondents were subject to Marty's and Marie's settlements. Absent special circumstances, "'a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.' [Citations.]" (*Sander/Moses Productions, Inc. v. NBC Studios, Inc.* (2006) 142 Cal.App.4th 1086, 1095.) Because Elementis sought settlement credits, the burden of proving that the settlements bound respondents is reasonably allocated to Elementis.

In opposing Elementis's request for settlement credits, respondents submitted declarations stating (1) that they were not

parties to the litigation of Marty's and Marie's claims, (2) that they had no proprietary interest in those claims, (3) that they did not participate in the negotiation of Marty's and Marie's settlements, (4) that they lacked prior knowledge of those settlements, and (5) that they never authorized Marty and Marie to settle their wrongful death claims. Elementis offered *no* evidence contradicting those declarations, and argued only that respondents did not state that they received no funds from the settlements. The trial court thus reasonably concluded that Elementis had not shown that the settlements bound respondents.[10]

On appeal, Elementis's principal contentions focus on whether respondents may recover from Marie's settlement funds allocated to future wrongful death actions. Elementis suggests several theories potentially supporting such a recovery, including that Marty and Marie were acting as respondents' agents or trustees when they negotiated the settlements, as well as that a constructive trust may be imposed on the settlement funds for the benefit of respondents. In connection with these theories, Elementis places special emphasis on the finding (by Judge

---

[10] Elementis suggests that determination was erroneous because respondents did not assert wrongful death claims against any of the settling defendants. However, as plaintiffs asserting wrongful death claims need not join all potential defendants in a single action (*Helling v. Lew* (1972) 28 Cal.App.3d 434, 438), the trial court was not compelled to conclude that the settlements bound respondents based on their failure to sue the settling defendants.

Kralik) underlying the 2013 judgment, namely, that 20 percent of the settlement funds were allocated to wrongful death claims.[11]

It is unnecessary to examine whether there is a viable theory under which respondents may recover settlement funds from Marie, as we reject the central premise underlying Elementis's contentions. The premise is that such a theory, if it exists, entitles Elementis to a section 877 credit based on the settlement funds allocated to wrongful death claims. Elementis asserts: "Respondents are of course free to let their mother keep [that] money, but it belongs to them and Elementis is entitled to the settlement credit."

The premise fails because the propriety of a section 877 credit hinges on whether Marty's and Marie's settlements foreclosed potential wrongful death claims by respondents *against the settling defendants*, not on whether respondents may recover a share of the settlement funds from Marie. As explained above, as a nonsettling defendant, Elementis may seek section 877 credits in respondents' wrongful death action based on Marty's and Marie's settlements in the original action only if those settlements bind respondents, that is, preclude them from asserting wrongful death claims against the settling defendants. We therefore limit our inquiry to whether Elementis has identified a basis for regarding the settlements as binding upon respondents.

Elementis suggests that Marty and Marie, in negotiating the settlements, acted as respondents' agents because the settlements secured funds intended to resolve prospective

---

[11]     Although Elementis argued below that respondents were estopped from challenging the finding, Elementis has abandoned that contention on appeal.

wrongful death actions.  We disagree.  As respondents did not directly authorize Marty and Marie to resolve their claims, Elementis must rely on a theory of "ostensible" agency.  Under such a theory, respondents are bound by Marty's and Marie's settlements only if respondents ratified them -- that is, accepted the settlement funds -- because there is no evidence that respondents created the appearance that Marty and Marie were negotiating the settlements on respondents' behalf.[12]  The theory thus fails, as Elementis offered no evidence to the trial court that respondents obtained settlement funds.

Nonetheless, Elementis suggests that respondents did, in fact, receive settlement funds, pointing to their trial testimony that their parents gave them cash "gifts" totaling $114,000 shortly before and after Marty died.  However, because Elementis never directed the trial court's attention to respondents' trial testimony, that contention has not been preserved for appeal.  (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622,

---

[12]  Ordinarily, a party seeking to assign liability to the principal for the acts of an ostensible agent must establish three elements:  (1) the party held a reasonable belief in the agent's authority in dealing with the agent; (2) the principal's conduct -- active or neglectful -- generated the party's belief in the agent's authority; and (3) the party was not negligent in holding the belief.  (*Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399.)  In lieu of showing element (2), the party may show that the principal ratified the conduct performed in its name.  "Ratification is the subsequent adoption by one claiming the benefits of an act, which without authority, another has voluntarily done while ostensibly acting as the agent of him who affirms the act and who had the power to confer authority (Civ. Code, §§ 2310, 2312)."  (*Reusche v. California Pacific Title Ins. Co.* (1965) 231 Cal.App.2d 731, 737.)

28

631-632.) Furthermore, we would reject it were we to consider it, as ratification through the acceptance of benefits requires knowledge of the relevant circumstances (*Johnson v. California Interurban Motor Transp. Assn.* (1938) 24 Cal.App.2d 322, 338). Nothing in respondents' trial testimony implies that the gifts reflected settlement funds or that respondents had any knowledge of the source of the gifts. In sum, the trial court did not err in denying Elementis a section 877 credit based on Marty's and Marie's settlements.

## DISPOSITION

The judgment and orders of the court are affirmed. Respondents are awarded their costs on appeal.

MANELLA, P.J.

We concur:

WILLHITE, J.

COLLINS, J.

29

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BRUCE MARTENEY et al., | B283411 |
| Plaintiffs and Respondents, | (Los Angeles County |
| v. | Super. Ct. Nos. BC489395, JCCP No. 4674 |
| ELEMENTIS CHEMICALS INC., | ORDER CERTIFYING OPINION |
| Defendant and Appellant. | FOR PUBLICATION |

THE COURT*

     Good cause appearing, it is ordered that the opinion in the above entitled matter, filed October 5, 2018, be published in the official reports.

_____
*MANELLA, P. J.            WILLHITE, J.            COLLINS, J.