Filed 5/18/23  Funes v. Sutton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| CHELSEA FUNES, | |
| Plaintiff and Appellant, | C095990 |
| v. | (Super. Ct. No. SCV0044429) |
| ASHLEY SUTTON, | |
| Defendant and Respondent. | |

Larry Svardal and Marie Svardal were brother and sister.[1]  Ashley Sutton is Larry's daughter, and Chelsea Funes is Marie's daughter.  Marie died before this dispute arose and, on her death, Chelsea became beneficiary of the irrevocable trust that had been established for Marie's benefit.  To resolve disputes between Chelsea and Larry

---

[1]  We will refer to family members by their first names for clarity.

regarding Larry's management of trusts and a corporation, Larry and Chelsea entered into a settlement agreement. After Larry's death, Chelsea sued Ashley for breach of contract, claiming Chelsea did not receive what she was owed under paragraph 3(d) of her agreement with Larry.

The trial court granted summary judgment in favor of Ashley, ruling there was no basis to hold Ashley responsible for the promises made by Larry in the settlement agreement. The trial court denied Chelsea's oral request to amend her first amended complaint.

Chelsea now contends triable issues exist as to whether Ashley is bound by the settlement agreement under various legal theories, such as that she accepted benefits under the agreement, took control of proceeds and payments, performed under the agreement, and became Larry's assignee. Because Chelsea has not supported many of her factual assertions with citations to the record and has not met her burden to show a triable issue of material fact, we will affirm the judgment.

BACKGROUND

Larry and Marie's parents (the grandparents) established separate trusts for the benefit of their children and transferred certain real properties to those trusts. The grandparents also formed Pinnacle, Inc. (Pinnacle). The properties held in the trusts were then transferred to Pinnacle, which issued stock in equal amounts to each trust.

Chelsea became the beneficiary of the trust established for Marie's benefit upon Marie's death. Larry became the successor trustee of the trusts in 2006. He was also president of Pinnacle. Chelsea was not involved in managing the trust established for Marie's benefit and was not a shareholder, officer, or director of Pinnacle. Nevertheless, there were disputes between Chelsea and Larry regarding Larry's management of Pinnacle and the trusts.

Attorneys negotiated a settlement of Chelsea and Larry's disputes in mid-2018 through March 2019. Ashley, a certified public accountant, assisted Larry with issues

2

related to the settlement, and she talked to Chelsea about the potential tax consequences of proposed distributions.

Chelsea and Larry executed a settlement agreement on April 8, 2019. Paragraph 1 of the agreement provided that Larry, in his capacity as trustee of the trusts and president of Pinnacle, would distribute certain assets before April 30, 2019. Paragraph 2 of the settlement agreement stated that Larry would sell a Kyburz cabin to Ashley on or before June 1, 2019, and would pay certain proceeds to Chelsea.

Paragraph 3 of the settlement agreement pertained to real property in Shingle Springs. Larry delegated to Ashley and Chelsea, acting as agents of the trusts, the authority to decrease the list price and sell the property as Ashley and Chelsea might agree. The settlement agreement provided that the sale proceeds would be distributed as follows: (a) an equalizing payment of $44,093 to Larry; (b) reimbursement of $72,005 to Larry; (c) $116,663 to Chelsea; and (d) the balance to Larry and Chelsea in equal proportions.

Larry died on July 5, 2019. No probate action was filed to administer his estate.

The Shingle Springs property was sold in December 2019. Chelsea received the properties and payments under paragraphs 1, 2 and 3(c) of the settlement agreement, but she claims she did not receive what she was owed under paragraph 3(d) of the agreement.

Chelsea sued Ashley, ostensibly in Ashley's capacity as Larry's personal representative and successor in interest, for breach of contract. The first amended complaint alleged that Ashley breached the settlement agreement between Chelsea and Larry by failing to make the payment to Chelsea required under paragraph 3(d) of the settlement agreement. Ashley moved for summary judgment, arguing Chelsea could not prove Ashley was bound by the agreement. Chelsea also moved for summary judgment, claiming the settlement agreement did not provide for the deduction of taxes from Chelsea's share of certain sale proceeds.

3

The trial court granted summary judgment in favor of Ashley. It concluded Ashley was not a party to the settlement agreement, there was no evidence Ashley was ever named as Larry's personal representative, and Ashley was not sued as a successor trustee of any trust. The trial court further ruled Chelsea did not establish there was an assignment of the settlement agreement or that benefits of the agreement inured to Ashley. It denied Chelsea's oral request to amend the first amended complaint because the request was untimely, Chelsea did not submit a proposed amended pleading, and it was unclear in what manner Chelsea would amend her pleading.

STANDARD OF REVIEW

We review an order granting summary judgment de novo, employing the same analysis as the trial court. (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1206.) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.) First, we identify the issues framed by the pleadings because it is those allegations to which the defendant's motion must respond. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) We then determine whether the defendant's showing establishes facts negating the plaintiff's claims and justify a judgment in the defendant's favor. (*Id.* at pp. 493-494.) If the defendant makes such a showing, we determine whether the plaintiff has demonstrated the existence of a triable issue of material fact. (*Id.* at p. 494.) We independently examine the record, considering all of the evidence set forth in the papers except that to which objections were made and sustained, to determine whether a triable issue of material fact exists. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249.) However, supporting and opposing declarations must be made by a person on personal knowledge, must set forth admissible evidence, and must affirmatively show that the declarant is competent to testify to matters stated in the declarations. (Code Civ. Proc., § 437c, subd. (d); *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th

4

1509, 1524; *Hayman v. Block* (1986) 176 Cal.App.3d 629, 638-639.) To resist summary judgment, the plaintiff must point to evidentiary facts and not merely argument. (*Hoffman v. Sports Car Club of America* (1986) 180 Cal.App.3d 119, 126.)

DISCUSSION

Chelsea contends triable issues exist as to whether Ashley is bound by the settlement agreement.

Ashley was not identified as a party to the settlement agreement and did not sign it. Ashley averred that she did not enter into an agreement with Chelsea to perform Larry's obligations under the agreement.

Nevertheless, Chelsea argues Ashley is bound by the agreement because she accepted benefits under the agreement. Chelsea cites various Civil Code statutes in support.

Civil Code section 1589[2] states: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Section 1589 may apply to an assignee who receives all of the benefits of the contract or a person who expressly assumes the obligations of the contract. (*LAOSD Asbestos Cases* (2018) 28 Cal.App.5th 862, 878; *Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 603; *Recorded Picture Company [Productions] Limited v. Nelson Entertainment, Inc.* (1997) 53 Cal.App.4th 350, 362 & fn. 6 (*Recorded Picture Company*).) Section 3521 is a corollary to section 1589. (*Recorded Picture Company,* at p. 361, fn. 5.) Section 3521 provides: "He who takes the benefit must bear the burden." In addition, Chelsea cites section 1584, which states: "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the

---

[2] Undesignated statutory references are to the Civil Code.

5

proposal." And she cites section 1581, which states: "Consent can be communicated with effect, only by some act or omission of the party contracting, by which he intends to communicate it, or which necessarily tends to such communication."

The settlement agreement called for the distribution of assets to Larry and Chelsea and a mutual release of claims between Larry and Chelsea. It did not provide for a payment or distribution to Ashley or a release of claims benefiting Ashley. It did not state that it bound or inured to the benefit of Larry's representatives, heirs, or agents.

Chelsea argues Ashley benefited from the settlement agreement because it provided that Ashley would purchase the Kyburz cabin. But the agreement stated that as to the $250,000 sales price, $125,000 in cash would be distributed to Chelsea and a $125,000 secured promissory note would be given to Larry. Chelsea does not show how the requirement to purchase the property was a benefit to Ashley, and Chelsea does not support, with citations to the record, factual assertions in her appellate opening brief that Ashley otherwise benefited from the release of claims in the settlement agreement and other distributions under the settlement agreement. (*Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 451; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.)

Chelsea next argues Ashley is bound by the settlement agreement because Ashley took control of the sales proceeds and made the payments required under paragraph 3(a), 3(b), 3(c) and 3(d) of the agreement. However, regarding the distribution required under paragraph 3(d) of the settlement agreement -- the subject of Chelsea's lawsuit -- Chelsea's declaration in opposition to Ashley's summary judgment motion references a check sent by Ashley's sister. There is no admissible evidence that Ashley made a payment under paragraph 3(d) of the settlement agreement. There is also no evidence that Ashley made the payments under paragraphs 3(a) and 3(b) of the settlement agreement. Factual assertions to the contrary in Chelsea's appellate opening brief are not

6

supported by record citations. Moreover, there is no support for Chelsea's claim that Ashley accepted the consideration flowing to her under the settlement agreement.

Chelsea emphasizes that Ashley spoke with her about the sale of the Shingle Springs property and the distribution of sales proceeds. But Chelsea averred that her negotiations were with Larry, that they were done through counsel, that she relied on her counsel to negotiate the settlement agreement, and none of the discussions between Chelsea and Ashley were intended to modify the agreement. Nonsignatories to a settlement agreement may be subject to it when they participate in negotiations with an understanding that the agreement affects their interests (*LAOSD Asbestos Cases, supra*, 28 Cal.App.5th at p. 878), but there is no evidence of such circumstances here.

Chelsea further asserts that Ashley performed under the settlement agreement as a successor trustee of the trusts and authorized representative of Pinnacle. However, Chelsea does not support those claims with citations to the record. In any event, no admissible evidence shows that Ashley performed an obligation under the agreement as a successor trustee of the trusts.[3] There is also no evidence that Ashley acted as a representative of Pinnacle.

In addition, Chelsea argues Ashley was Larry's assignee. Assignment refers to the transfer of property or some right or interest from one person to another. (*Commercial Discount Co. v. Cowen* (1941) 18 Cal.2d 610, 614.) An assignment may result where a

---

[3] Exhibit Y to Chelsea's declaration in opposition to Ashley's motion is a copy of an Affidavit of Death of Trustee recorded with the county recorder of El Dorado County. The Affidavit states that Ashley is a successor trustee of a trust dated May 15, 1986. The phrase "that certain Trust Agreement for benefit of Larry J. Svardal dated May 15, 1986" is handwritten above the signature line. The statements in the Affidavit constitute hearsay for which no exception to the rule against hearsay is established. (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375; *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117.) The hearsay statement does not create a triable issue of fact. (See Code Civ. Proc., § 437c, subd. (d).)

person's actions showed the person was bound by a contract and accepted benefits under the contract. (*Walmsley v. Holcomb* (1943) 61 Cal.App.2d 578, 581-582.) " 'If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the [property,] then an assignment will be held to have taken place.' " (*Recorded Picture Company, supra*, 53 Cal.App.4th at p. 368.) While the general rule is that an assignment of rights and benefits under an executory contract does not bind the assignee to perform the assignor's obligations under the contract, assumption of obligations may be implied from acceptance of benefits under the contract. (*Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal.App.3d 737, 745.)

Here, the agreement did not state that it bound Larry's assignees or successors, and there is no evidence Ashley agreed to be bound by the agreement. And as we have explained, Chelsea failed to show that Ashley received benefits under the agreement. (*Recorded Picture Company, supra*, 53 Cal.App.4th at pp. 356, 361-363.) Without citation to the record, Chelsea says Ashley controlled Pinnacle and its properties and the distributions required under the agreement. The unsupported claims are forfeited. (*Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

Chelsea has not shown that a triable issue of material fact exists. Because the trial court properly granted summary judgment in favor of Ashley and against Chelsea, we do not address arguments as to whether Pinnacle was required to pay income taxes before making the distributions under the settlement agreement or whether Chelsea consented to the deduction of taxes. We also do not address Chelsea's arguments regarding ratification and unjust enrichment that she asserted for the first time in her appellate reply brief. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; *Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) In addition, we do not address Chelsea's contention that reversal of the trial court's summary judgment order necessitates reversal of the attorneys' fees award to Ashley.

8

## DISPOSITION

The judgment is affirmed.  Ashley shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


    /S/
MAURO, Acting P. J.

We concur:


    /S/
KRAUSE, J.


    /S/
MESIWALA, J.